[No. 54203–1.  En Banc.  July 15, 1988.]

CERTIFICATION FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
IN
NORTH COAST AIR SERVICES, LTD., ET AL, *Plaintiffs*,
v. GRUMMAN CORPORATION, *Defendant*.

316

*Crane, Stamper, Boese, Dunham & Drury,* by *John A. Drury* and *Rebecca C. Earnest,* for plaintiffs.

*F. Lee Campbell, Tracy R. Barrus,* and *Philip A. Talmadge* (of *Karr, Tuttle, Koch, Campbell, Mawer, Morrow & Sax, P.S.*), for defendant.

*Bryan P. Harnetiaux* and *Robert H. Whaley* on behalf of Washington Trial Lawyers Association, amici curiae for plaintiffs.

*Russell C. Love* on behalf of Washington Defense Trial Lawyers, amicus curiae for defendant.

BRACHTENBACH, J.—The United States District Court for Western Washington certified this question:

> Under RCW 7.72.060(3), which requires a claimant to bring a products liability claim within three years "from the time the claimant discovered or in the exercise of due diligence should have discovered the harm and its cause," does the statute of limitations begin to run as soon as an injury occurs in which a product is involved, or is it a question for the trier of fact to determine when "in the exercise of due diligence" the product's relationship to the injury should have been discovered, with the statute of limitations running from that date.

Order, dated Aug. 5, 1987.

The lawsuit in federal district court arose from the crash of a Grumman Mallard amphibious airplane, manufactured by defendant Grumman Corporation. The crash occurred on March 5, *1974.* The action was filed July 30, *1986.* The plaintiffs are the corporate owner of the crashed airplane, the personal representative of the pilot killed in the crash, and the pilot's father who is also chief executive officer of the corporate owner.

The crash occurred in British Columbia. An undisputed fact submitted to us by the trial court is that an inquest was held and that investigating authorities attributed the crash to pilot error. The plaintiffs' pleadings include an affidavit by the deceased pilot's father stating that the investigating authorities also concluded there was no mechanical defect in the plane, and that he learned nothing to the contrary until more than 11 years later.

Plaintiffs allege that on May 6, *1984,* the father learned that a Grumman Mallard belonging to the corporate plaintiff almost stalled on takeoff. It is alleged that a defect in the elevator control assembly could cause the elevator to freeze, leading to a crash. The father allegedly learned of other incidents involving this aircraft in which the plane crashed following a stall. The father alleges that only after

these other incidents did he realize that the 1974 crash may have resulted from a similar defect. Therefore, the father began an investigation of the cause of the crash which killed his son. He alleges that he located a piece of the plane's wreckage which contains a defective elevator linkage.

Defendant moved to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), or alternatively, for judgment on the pleadings or for summary judgment. The district court judge, the Honorable Carolyn R. Dimmick, denied the motion, ruling in part as follows:

> Plaintiffs' complaint is not barred by RCW 7.72.060(3). For purposes of this statute of limitations as it relates to the plaintiffs' allegations and claims, the plane crash as "cause" of the "harm" to plaintiffs and the alleged cause of the crash, the design defect, are inseparable. Viewing the material allegations and evidence in the light most favorable to the plaintiffs, as here this Court must, the cause of the harm to the plaintiffs is both the crash and the alleged design defect which precipitated it. Consistent with this view of the material allegations and evidence, plaintiffs filed their complaint within three years from the time they "discovered" the cause of their harm. Although the defendant has not filed its answer, the alleged design defect and its discovery are, for purposes of tolling the statute of limitations, material and presumably disputed issues of fact. For all these reasons, dismissal or summary judgment is improper here.

Order, dated Feb. 13, 1987.

Defendant moved for reconsideration, or alternatively, for certification to the Ninth Circuit Court of Appeals, 28 U.S.C. § 1292(b) (1982). The federal district court on its own motion then certified to this court the above question. For reasons stated hereafter we agree with the conclusion of the federal district court that the action is not barred as a matter of law.

Defendant's position is that "a product liability claim accrues for purposes of RCW 7.72.060(3) when the claimant knew or should have known the harm and the immediately apparent basis for the harm." Brief of Appellant, at 34.

Thus, defendant reasons that the action accrued at the time of the crash because plaintiff knew the harm (death of the pilot) and its cause (crash of the plane). Defendant would substitute the phrase "immediately apparent basis for the harm" for the word "cause," in the statute.

Plaintiffs contend that the statute "requires discovery of a causal connection of a product to an injury, and that it is a factual question whether a claimant has exercised due diligence in discovering that causal connection in cases in which the connection is not immediately obvious." Brief of Respondents, at 30.

The statute in question, RCW 7.72.060(3), provides: "no claim under this chapter may be brought more than three years from the time the claimant discovered or in the exercise of due diligence should have discovered the harm and its cause."

We conclude that the claimant in a product liability case must have discovered, or in the exercise of due diligence should have discovered, a factual causal relationship of the product to the harm.

That means in this case the action did not accrue at the time claimant knew of the harm (death) and knew that the apparent and immediate cause was the crash. At the time of the crash obviously the claimant knew of the harm. Equally obvious is that claimant knew the ostensible cause was the crash. Defendant would have that suffice. For reasons discussed hereafter we hold that the claimant must know or should with due diligence know that the cause in fact was an alleged defect. Whether the claimant knew or should have known will ordinarily be a question of fact. That the causal connection usually is a question of fact is recognized. *See, e.g., Shaughnessy v. Spray,* 55 Or. App. 42, 51, 637 P.2d 182 (1981), *review denied,* 292 Or. 589, 644 P.2d 1130 (1982); *Eisenmann v. Cantor Bros.,* 567 F. Supp. 1347, 1355 (N.D. Ill. 1983).

Defendant argues that we should examine legislative history which defendant contends shows a legislative intent to: (1) overrule the discovery rule of *Ohler v. Tacoma Gen.*

*Hosp.,* 92 Wn.2d 507, 598 P.2d 1358 (1979); (2) accrue the action when the claimant knew or should have known of the "immediately apparent basis" for the harm; and (3) allow statute of limitations questions to be resolved ordinarily as a matter of law. Brief of Appellant, at 21, 34.

Plaintiffs, alternatively, assert that if the statute is ambiguous, legislative history leads to their interpretation. Whether we limit ourselves to an interpretation of the statute or examine legislative history we reach the same conclusion.

Before examining the statute and its history we point out that this case illustrates the difficulties inherent in statutory construction, around which has developed an entire body of rules or canons of interpretation with an accompanying array of literature. The most–cited text comprises four volumes. J. Sutherland, *Statutory Construction* (4th ed. 1974–86). Volume 2A, § 45.01 n.1 cites two pages of literature.

The most often asserted objective of interpretation is to ascertain legislative intent, a generality formulated as early as 1584 by Lord Coke. 2A N. Singer, *Statutory Construction* § 45.05.

The courts also recite the litany that if the words are not ambiguous, there is no need or authority for judicial interpretation.

> However, this rule is deceptive in that it implies that words have intrinsic meanings. . . .
> The assertion in a judicial opinion that a statute needs no interpretation because it is "clear and unambiguous" is in reality evidence that the court has already considered and construed the act.

2A N. Singer, *Statutory Construction* § 45.02 (4th ed. 1984).

An alternative criteria is suggested in the canon that words are to be given their usual and ordinary meaning. *State ex rel. Longview Fire Fighters, Local 828 v. Longview,* 65 Wn.2d 568, 571, 399 P.2d 1 (1965).

There may be a significant difference between "intent" and "meaning." Holmes went so far as to say that "we do not inquire what the legislature meant; we ask only what the statute means." O.W. Holmes, *Collected Legal Papers* 207 (1920). This court has combined these approaches by holding that the Legislature's intention "is to be deduced, if possible, from what it said." *Lynch v. Department of Labor & Indus.*, 19 Wn.2d 802, 806, 145 P.2d 265 (1944); *State v. Wilbur,* 110 Wn.2d 16, 18, 749 P.2d 1295 (1988). *See* 2A N. Singer § 45.08.

The immediate case also involves the relevance and weight of committee reports, statements made at committee meetings and in floor debate.

We recognize that the ultimate purpose of interpretation, regardless of what canons are used to assist the analytical methodology, is to determine what the statute means. That usually means ascribing to the words of the statute their plain and ordinary meaning. Intent, if ascertainable, may be of assistance, but cannot override an otherwise discernible, plain meaning.

As discussed above, if we look only to the statute, the court examines the words of the statute and gives those words their plain and ordinary meaning. We may examine the legislative declaration of purpose to assist in determining that the plain meaning as we ascertain it is consistent with that declared purpose. RCW 7.72 is a codification of Laws of 1981, ch. 27. The preamble declares:

> It is the intent of the legislature to treat the consuming public, the product seller, the product manufacturer, and the product liability insurer in a balanced fashion in order to deal with these problems.
>
> It is the intent of the legislature that the right of the consumer to recover for injuries sustained as a result of an unsafe product not be unduly impaired. . . .

Laws of 1981, ch. 27, § 1.

With that legislative declaration of purpose in mind, we examine the statute. The word "harm" is defined in RCW 7.72.010(6). There is no question here that the "harm" was

the death of the pilot. "Cause" is not defined; its meaning is critical to resolution because the claimant must not only have discovered or should have discovered the harm, but also "its cause."

The dictionary definition of cause is pertinent: cause: "1 a: a . . . thing, fact, or condition that brings about an effect . . . 3 a: something that occasions or effects a result". *Webster's Third New International Dictionary* 356 (1981).

The distinction which must be drawn in interpreting "cause" is between a cause and a condition. "The cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for the causal agencies to act." *Merlo v. Public Serv. Co.,* 381 Ill. 300, 316–17, 45 N.E.2d 665 (1942); *Coyle v. Stopak,* 165 Neb. 594, 606, 86 N.W.2d 758 (1957). An act, omission or event is not regarded as the cause of a result if the result would occur without it. *Polyard v. Terry,* 160 N.J. Super. 497, 511, 390 A.2d 653 (1978).

Defendant is candid in its assertion that the discovery rule should not be applied to a traumatic injury case. Brief of Appellant, at 17. It advances the notion that the claim accrues "when the claimant knew or should have known the harm and the immediately apparent basis for the harm." Brief of Appellant, at 34. This approach literally equates "cause" with the traumatic event. Thus, any airplane crash with known resultant injuries would automatically start the running of the statute of limitations. This would be true despite the possibility that pilot error, weather conditions, faulty tower control, or whatever was the cause in fact. Likewise, an automobile crash with known resultant injuries would accrue the claim, even though the cause in fact might be thought to be driver error, road conditions or any one of a myriad of causes, but was in fact a defect in the automobile.

Defendant's interpretation under these facts would read out of the statute the concept of "should have known/due diligence" on the part of the claimant. Knowledge would be imputed as a matter of law from the traumatic event. Had

the Legislature intended such a bright line, it could have plainly so provided.

The Legislature declared its intent that the "right of the consumer to recover for injuries sustained as a result of an unsafe product not be unduly impaired." Laws of 1981, ch. 27, § 1. The defendant's proposed rule would require a claimant to sue within 3 years whether or not the plaintiff knew or should have known that there was a defective product. This statutory interpretation negates the fact that the claimant might not know what was in fact the cause of the harm. The necessity for the discovery rule would not be served and the right of recovery would be unduly impaired.

The defendant's interpretation renders meaningless the obligation of the claimant to discover with due diligence the actual cause of the harm. Indeed, the defendant asserts that the discovery rule "should not be applied to a traumatic injury case." Brief of Appellant, at 17.

The desirability of a discovery principle is particularly evident in this case where the official investigation concluded that the "cause" of the crash was pilot error. Construing the pleadings most favorable to the plaintiff as is required in this procedural posture, the possibility of mechanical defect was ruled out by the investigating authorities. Yet the defendant's proposed rule would require plaintiffs to begin a suit before they either had or should have had any knowledge of a possible legal responsibility of this defendant. Plaintiffs concede that there is a question of fact as to when they discovered or should have discovered the causal connection of the alleged defect. Brief of Respondents, at 31.

We now address defendant's contention that legislative history supports its position. The impetus for legislative action was this court's application of the discovery rule to a product liability claim in *Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 598 P.2d 1358 (1979). We held that plaintiff's claim did not accrue "until she discovered or reasonably should have discovered all of the essential elements of her

possible cause of action, *i.e.*, duty, breach, causation, damages." *Ohler,* at 511. Defendant traces refinement of the discovery rule through *Sahlie v. Johns–Manville Sales Corp.,* 99 Wn.2d 550, 663 P.2d 473 (1983), *White v. Johns–Manville Corp.,* 103 Wn.2d 344, 693 P.2d 687 (1985), and *Reichelt v. Johns–Manville Corp.,* 107 Wn.2d 761, 733 P.2d 530 (1987).

Defendant relies extensively on the rationale of *Tyson v. Tyson,* 107 Wn.2d 72, 727 P.2d 226 (1986). Defendant's support from *Tyson* is totally undercut by the enactment of Laws of 1988, ch. 144. That statute applies the discovery rule in instances denied by *Tyson.*

We concern ourselves only with the *Ohler* principle because defendant contends that in enacting RCW 7.72-.060(3) the Legislature clearly intended to overrule *Ohler.* Brief of Appellant, at 4. Defendant maintains that "[t]he Legislature in 1981 rejected *Ohler* and its progeny in favor of a more objective standard that could be applied by courts as a matter of law." Brief of Appellant, at 32.

There is some merit to defendant's assertion that the discovery principle should be limited to situations where the cause in fact of the harm is not readily discoverable or harm develops over a period of time; a progressive disease caused by asbestos is a good example. The difficulty with defendant's analysis, and the reason it fails, is that the language of the statute is not so constructed. The heart of defendant's forceful argument is that there is no need for an opportunity for discovery of the cause when there is "an immediately apparent basis" for the harm. Application of the defendant's proposal to these facts would mean that a court, as a matter of law, would necessarily hold that because it was immediately apparent that the crash was the cause of death, the claim was barred 3 years after the crash. The fact that the official investigation ruled out the possibility that a product defect was the actual cause of the crash would be immaterial. We cannot reconcile that result with the purpose and language of the statute.

The history of the statute includes in part the report of a select committee on product liability and tort reform created by Senate Resolution 1979–140. The final report of the select committee was incorporated in the Senate Journal, 47th Legislature (1981), at 617. Therefore we may consider it. The relevant portion of the committee report stated:

> The Committee has carefully selected language relating to the statute of limitation in order to *modify* the discovery rule announced in *Ohler* . . . Because the discovery of all the essential elements of the cause of action is, practically speaking, beyond the understanding of the average layperson until he chooses to seek legal counsel, the *Ohler* rule unjustifiably extends the period during which an action may be brought. In utilizing the language "time of discovery of the harm and its cause," the Committee intends to recreate a more reasonable and meaningful statute of limitations as to product liability claims.

(Italics ours.) Senate Journal, 47th Legislature (1981), at 626. A similar comment is contained in the official report at pages 633–34, *i.e.,* it repeats the declaration of intent to *modify* the rule of *Ohler.* Defendant insists the intent was to overrule rather than modify *Ohler.*

A floor colloquy between Senators Newhouse and Bottiger was as follows:

> Senator Newhouse: "Thank you. One more question. Is the statute of limitations provision in section 7(3) [RCW 7.72.060(3)] intended to overrule our Supreme Court's decision in Ohler vs. Tacoma General Hospital, in which it was held that the statute of limitations does not begin to run until the plaintiff has discovered each and every element of his or her cause of action?"
>
> Senator Bottiger: "Yes, the discovery rule would apply only to the discovery of the harm and its cause. In this context, 'discovery of the cause' merely means the discovery that the product was casually [*sic*] connected with the harm. It does not mean the discovery of the nature of the defect of the product.

Senate Journal, 47th Legislature (1981), at 616.

The official committee report, in two places, declares an intent to *modify Ohler.* It is clear that the modification

related to the *Ohler* requirement that the claimant learn all of the essential elements of a legal cause of action. Beyond that the report is not definitive as to how the *Ohler* rule was modified. Senator Bottiger's response indicates his opinion that the discovery required is that the product was causally connected with the harm. The discovery, the Senator continued, need not be of the nature of the defect in the product.

We are not persuaded that this floor exchange supports defendant's position. First, the answer of a single legislator should not create an intent different from that in the official committee report if the answer is inconsistent with the report. Second, the question and answer are ambiguous. Senator Bottiger said the bill would overrule *Ohler,* but to *overrule Ohler* would eliminate the discovery rule in product cases. That is not the effect of this statute; indeed it statutorily recognizes a different form of what had been a judicially created discovery rule. The statute, despite the floor colloquy, did not overrule *Ohler,* it modified the conditions necessary to trigger running of the statute of limitations.

These evidences of legislative intent should not lead defendant to conclude that a claimant need only know of the "immediately apparent basis for the harm." At best this legislative history demonstrates an awareness of the significance of the *Ohler* definition of the discovery rule. The difficulty is that the language chosen to modify *Ohler* is imprecise and ambiguous. "Cause" is a word with multiple connotations. Interpretation is more difficult because "cause" has legal meanings as well.

Given that ambiguity it is appropriate to apply a liberal construction consistent with the Legislature's declaration that its intent was to not unduly impair a claimant's right to recover.

Defendant refers in its brief to testimony before the committee and to remarks from staff counsel. We necessarily give little weight to such source material. It is unwise to go behind the committee report and examine piecemeal

quotations. What motivated the actual language of the statute is too speculative to be of assistance in interpreting the words enacted into law.

The Senate Committee report refers to its reliance upon a so–called model uniform product liability act. It is a model act only because it is titled such. It was promulgated by the Department of Commerce. 44 Fed. Reg. 62,714–62,750 (1979). The language of § 110(c) contains language like that of RCW 7.72.060(3). It is testimony about that section from the chairman of the task force of the Commerce Department and committee counsel which defendant cites. Even if we gave weight thereto, it is inconclusive except to show an intent to *modify* the *Ohler* rule. More persuasive is the writer's conclusion, referring to the precise language involved in § 110(c) (and RCW 7.72.060(3)):

> It would appear that the statute does not begin to run upon mere discovery that a "product" caused an injury; the discovery provision would be triggered upon discovery that a "defective product" caused the injury.

McGovern, *The Status of Statutes of Limitations and Statutes of Repose in Product Liability Actions: Present and Future,* 16 Forum 416, 425 (1980–1981).

The quoted conclusion is supported by the analysis published by the task force which developed the model act. In reference to § 111(c), it is stated:

> Subsection (c) extends the limitation period beyond the time of harm in situations where the claimant would have no reason to know about the harm *or the causal connection to a defective product* (e.g., the case of long–term pharmaceutical harms).

(Italics ours.) Uniform Products Liability Act § 111 analysis.

On this record, there are no facts which causally connected the product to the harm. Plaintiffs had no more reason to believe that there was any defect in the aircraft than to believe or disbelieve the accuracy of the official investigation that the cause of the harm was pilot error and not the result of mechanical defect.

The defendant's analysis would mandate the commencement of the action within 3 years, regardless of the claimant's knowledge or ignorance of the cause in fact. Defendant would impose the most stringent interpretation so that the injury event alone would trigger the time limitation. However, the Legislature did not enact such a bright line discovery rule. The very basis of the discovery rule is that there is doubt as to when the statute begins to run.

This statute is intended to give the plaintiff a fair chance to ascertain the harm and its cause. Protection to the defendant is afforded by the provision that plaintiff may be barred if plaintiff did not exercise due diligence in discovering the harm and its cause. This standard of reasonable inquiry placed upon the plaintiff serves the policy reasons underlying statutes of limitation. Our interpretation is consistent with the legislative declaration of purpose to treat all parties in a balanced fashion and without unduly impairing the rights of one injured as a result of an unsafe product.

Whether plaintiff in due diligence should have discovered the cause of the harm is an unresolved question of fact.

PEARSON, C.J., and UTTER, DOLLIVER, DORE, and ANDERSEN, JJ., concur.

CALLOW, J. (dissenting)—The majority endeavors to use the trial judge's first–blush grant of summary judgment for the plaintiff as if that judgment were authority. The fact that, having granted the motion, the trial court reversed its initial decision and certified the question to this court reflects the court's concern about whether that initial decision was correct. The majority then proceeds to effectively repeal the product liability statute of limitations. This changes the statute from a defined, ascertainable time frame to an open–ended period that has no ultimate termination whatsoever.

RCW 7.72.060(3) states:

no claim under this chapter may be brought more than three years from the time the claimant discovered or in the exercise of due diligence should have discovered the harm and its cause.

The majority construes this language to mean that a cause of action does not accrue until the claimant discovers, or in the exercise of due diligence should have discovered, that his injury was caused by a defective product. Majority opinion, at 319. Thus, the majority would hold that the statute of limitations did not begin to run until the plaintiffs had thrust upon them in 1984 the awareness that the crash may have been caused by a defect in the elevator control assembly. I disagree. A cause of action should accrue when the claimant discovers, or in the exercise of due diligence should have discovered, a relationship or connection between his injury and the product. Therefore, in cases involving a sudden traumatic injury, the plaintiff is on notice of the possibility of a causal connection between his injury and the product and the statute of limitations begins to run as a matter of law when the injury occurred. I submit that in this case, the statute of limitations began to run when the crash occurred in 1974. I submit that the phrase "in the exercise of due diligence" places responsibility for discovering cause when there is injury and product involvement upon the injured party. The statute should begin to run at the time the plaintiff knows he is injured and knows or should have discovered what brought about the injury.

"A statute of limitation is defined as the action of the State in determining that, after the lapse of a specified time, a claim shall not be enforceable in a judicial proceeding." *Watters v. Doud,* 92 Wn.2d 317, 321, 596 P.2d 280 (1979). "A statute of limitations is designed to give an injured party a reasonable length of time in which to assert a claim, after which the statute seeks to achieve repose for

the potential defendant." Note, *Statutes of Limitations and the Discovery Rule in Latent Injury Claims: An Exception or the Law?*, 43 U. Pitt. L. Rev. 501, 512 (1982).

*Tyson v. Tyson,* 107 Wn.2d 72, 75–76, 727 P.2d 226 (1986) recently discussed the purposes behind statutes of limitations:

> Statutes of limitation assist the courts in their pursuit of truth by barring stale claims. A number of evidentiary problems arise from stale claims. As time passes, evidence becomes less available . . . Physical evidence is . . . more likely to be lost when a claim is stale, either because it has been misplaced, or because its significance was not comprehended at the time of the alleged wrong. In addition, the evidence which is available becomes less trustworthy as witnesses' memories fade or are colored by intervening events and experiences. . . . Thus, stale claims present major evidentiary problems which can seriously undermine the courts' ability to determine the facts. By precluding stale claims, statutes of limitation increase the likelihood that courts will resolve factual issues fairly and accurately.

In addition, in relation to product liability claims, the physical evidence over the years will rust and corrode, parts will be taken or damaged and new technology will replace the old in the literature and in the memories of the experts. All of which should be apparent, as a matter of law, in the present action.[1]

In *United States v. Kubrick,* 444 U.S. 111, 117, 62 L. Ed. 2d 259, 100 S. Ct. 352 (1979), the United States Supreme Court recognized that

---

[1]The majority asserts that the rationale of *Tyson v. Tyson,* is undercut by the enactment of Laws of 1988, ch. 144. The Legislature did not undercut the rationale of *Tyson.* It expressed a legislative intent that in childhood sexual abuse claims a 3–year statute of limitations would run from the time the victim "reasonably should have discovered that the injury . . . was caused by said act . . ." The legislative enactment of Laws of 1988, ch. 144, using the words "reasonably should have discovered" in contrast to the wording of RCW 7.72.060(3) "in the exercise of due diligence should have discovered" emphasizes the placement of a "due diligence" standard on one injured by a product, a responsibility not placed on a victim of child abuse. Laws of 1988, ch. 144 enlightens us rather on the real purpose of RCW 7.72.060(3) which is a commonsense balance ending stale product liability claims.

[s]tatutes of limitations . . . represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that "the right to be free of stale claims in time comes to prevail over the right to prosecute them."

Additionally, "statutes of limitations preserve certainty in the business operations of defendants, particularly when insurance is involved." Comment, *Statutes of Limitations in Product Liability Actions: The Discovery Rule of Franzen v. Deere & Co.,* 69 Iowa L. Rev. 1127, 1127 (1983–1984); *see* Comment, *Statutes of Limitations and the Discovery Rule in Latent Injury Claims: An Exception or the Law?,* 43 U. Pitt. L. Rev. 501, 513 (1982).

A statute of limitations normally begins to run at the time of the accident or injury. *Ruth v. Dight,* 75 Wn.2d 660, 666, 453 P.2d 631 (1969). However, in some cases, the injury may not occur or become apparent until after the statute of limitations period has expired. In such cases courts have applied what has come to be known as the discovery rule. The discovery rule provides that a statute of limitations does not begin to run until the plaintiff discovered, or should have discovered the cause of action. *U.S. Oil & Ref. Co. v. Department of Ecology,* 96 Wn.2d 85, 92, 633 P.2d 1329 (1981).[2] The rule "extends the limitation period beyond the time of harm in situations where the claimant would have no reason to know about the harm or the causal connection to a defective product (*e.g.,* the case of long–term pharmaceutical harms)." Model Uniform Product Liability Act § 110 analysis.

The discovery rule reflects a judicial determination to balance the possibility of stale claims against the unfairness of precluding justified causes of action where a plaintiff is unable to ascertain within the statute of limitations period that a wrong has been committed. *U.S. Oil,* at 93. The rule

---

[2]*U.S. Oil* involved, as do the other "discovery" cases, a situation where the plaintiff did not know it had been harmed and was entitled to discover the fact of harm. No such absence of awareness exists for the user of a product who suffers a traumatic impact.

generally has been applied in cases involving slowly developing diseases or injuries, such as asbestosis, DES, etc. Birnbaum, *"First Breath's" Last Gasp: The Discovery Rule in Products Liability Cases,* 13 Forum 279, 282 (1977).

> When the plaintiff's injury has a latency period or becomes manifest only after repeated exposure to the product, as in cases involving asbestos, certain drugs, chemicals, and medical products, the plaintiff may not immediately know of the harm or its cause. Under these circumstances, application of the time of injury rule may harshly result in barring a plaintiff's claim before the plaintiff is even aware of having been injured. As a response, a discovery rule under which the limitations period begins to run when the plaintiff discovers or reasonably should have discovered the injury, has been implemented . . .

*American Law of Products Liability* § 47.21 (3d ed. 1987). The rule has also been applied in medical malpractice cases involving a foreign object left in the body. Comment, *Preserving Causes of Action in Latent Disease Cases: The Locke v. Johns–Manville Corp. Date–of–the–Injury Accrual Rule,* 68 Va. L. Rev. 615, 624 (1982); *see Ruth.* In fact, the case rationale cited by the majority relies almost exclusively on *Ohler v. Tacoma Gen. Hosp.,* 92 Wn.2d 507, 598 P.2d 1358 (1979), *Sahlie v. Johns–Manville Sales Corp.,* 99 Wn.2d 550, 663 P.2d 473 (1983), *White v. Johns–Manville Corp.,* 103 Wn.2d 344, 693 P.2d 687 (1985), and *Reichelt v. Johns–Manville Corp.,* 107 Wn.2d 761, 733 P.2d 530 (1987), all cases involving concealed physical harm or slow to manifest itself drug or asbestos injury.

However, the need for a discovery rule does not exist in cases involving a sudden traumatic injury. In those cases, causes of action are apparent. *American Law of Products Liability* § 47.21; *see* Comment, *Statutes of Limitations and the Discovery Rule in Latent Injury Claims: An Exception or the Law?,* 43 U. Pitt. L. Rev. 501, 501 (1982). "By comparison with the chemical cases and their inherent baggage of injustice, courts find it easier to declare that the discovery rule does not protect the plaintiff whose injury

was caused by a 'sudden traumatic event.'" M. Shapo, *Products Liability* § 30.05[3][b] (1987).

In *United States v. Kubrick, supra,* the United States Supreme Court considered whether a claim accrues under the Federal Tort Claims Act when the plaintiff knows both the existence and cause of his injury or at a later time when he also knows that the acts inflicting the injury may constitute medical malpractice. *Kubrick,* at 113. In holding that a claim accrues when the plaintiff discovers the existence and cause of his injury, the Court stated:

> We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask.

*Kubrick,* at 122. Other courts have also recognized the distinction between gradually occurring and sudden and traumatic injuries. *See Lofton v. General Motors Corp.,* 694 F.2d 514, 517 (7th Cir. 1982); *LePretre v. Petrie Bros.,* 113 Ill. App. 3d 484, 447 N.E.2d 551, 553 (1983); *Reiterman v. Westinghouse, Inc.,* 106 Mich. App. 698, 308 N.W.2d 612, 613 (1981); *Raymond v. Eli Lilly & Co.,* 117 N.H. 164, 371 A.2d 170, 173 (1977).

In *Ruth v. Dight, supra,* this court adopted the discovery rule in the context of a medical malpractice case. The plaintiff brought an action in 1967 asserting that the defendant doctor operated on her in 1944 and negligently left a surgical sponge in her abdomen. The existence of the sponge was not discovered until she had a second operation in 1966. The trial court dismissed the plaintiff's complaint after determining that the applicable 3–year statute of limitations set forth in RCW 4.16.080(2) had expired. After

noting the difficulty of applying statutes of limitations in medical malpractice cases, the court held that

> in those classes of cases where medical malpractice is asserted to have occurred through the negligent leaving of foreign substances or articles in a surgical wound and which remain in the body after the wound has been surgically closed, the statute of limitations (RCW 4.16-.080(2)), commences to run *when the patient discovers or, in the exercise of reasonable care for his own health and welfare, should have discovered* the presence of the foreign substance or article in his body.

(Italics mine.) *Ruth,* at 667–68.

In *Ohler v. Tacoma Gen. Hosp.,* 92 Wn.2d 507, 598 P.2d 1358 (1979) this court first applied the discovery rule in a product liability action. The plaintiff, who had been born prematurely, was placed in an incubator shortly after birth and given oxygen. Subsequently, she was diagnosed as suffering from retrolental fibroplasia (RLF), which left her blind. RLF can result from the administration of oxygen during the first few days of an infant's life. The plaintiff knew this from an early age. However, she did not discover that her blindness might have been caused by the wrongful conduct of the hospital and the incubator manufacturer until she was 21. Shortly thereafter she filed medical malpractice and product liability claims.

The trial court in *Ohler* granted a summary judgment in favor of the defendants. However, this court concluded that the "trial court erred as a matter of law when it ruled that appellant's cause of action accrued when she 'discovered' the cause of her blindness ('too much oxygen'), even if no fault on the tort–feasor's part then was apparent." *Ohler,* at 510. Instead, the statute of limitations did not begin to run until the plaintiff "discovered or reasonably should have discovered all the essential elements of her possible cause of action." *Ohler,* at 514.

This court again applied the discovery rule in a product liability action in *Sahlie v. Johns–Manville Sales Corp.,* 99 Wn.2d 550, 663 P.2d 473 (1983). In *Sahlie,* the plaintiff, who suffered from asbestosis, brought an action against

several asbestos manufacturers. In 1970, the plaintiff discovered that he was suffering from asbestosis and that his condition was caused by exposure to asbestos. He did not learn until 1980, after consulting with an attorney, that he might have a claim against the asbestos manufacturers.

The court stated that under the rule set forth in *Ohler,* the statute of limitations does not begin to run until the plaintiff discovers: (a) that the plaintiff suffered harm from a product which had a defective condition making it unreasonably dangerous, (b) that the defendant sold the product, and (c) that the product reached the plaintiff without change. *Sahlie,* at 553. The court held that the plaintiff's cause of action did not accrue until 1980, when he learned the essential elements in his cause of action from his lawyer. However, *Sahlie* recognized the change made in the statute by the tort reform act stating:

> Much of the argument in the briefs of defendants is directed toward persuading us to depart from our holding in *Ohler.* This we decline to do. The merits of the rule in *Ohler* were considered recently by the Legislature. *See* Senate Select Committee Report on Tort and Product Liability Reform, Senate Journal, 47th Legislature (1981), at 617, 633–34. The response of the Legislature was to modify the rule. RCW 7.72.060. This amendment, however, applies only to claims arising on or after July 26, 1981. RCW 4.22.920. The Legislature, therefore, while apparently disagreeing with the rule announced in *Ohler,* saw fit not to disturb that rule in respect of claims arising prior to July 26, 1981. We perceive no compelling reasons for our accelerating the legislative modification of the rule in *Ohler.*

*Sahlie,* at 554.

This court limited the application of the discovery rule in *Reichelt v. Johns–Manville Corp.,* 107 Wn.2d 761, 733 P.2d 530 (1987). In *Reichelt,* the plaintiff, who suffered from asbestosis, brought product liability claims against asbestos manufacturers and distributors. The plaintiff was exposed to asbestos between 1953 and 1974, and was diagnosed as having asbestosis and pulmonary disease in 1980. *Reichelt,*

at 763. The plaintiff was diagnosed as having mild asbestosis in 1971, and was informed that his condition was caused by exposure to asbestos products. He subsequently filed a workers compensation claim, and eventually quit his job in 1974. The plaintiff later took a job with the United States Department of Labor as an Occupational Safety and Health Act (OSHA) investigator, where he received training in OSHA asbestos standards and learned in 1976 that asbestos was a hazardous material.

The court noted that "a cause of action in a negligence case accrues when a plaintiff discovers or reasonably should have discovered the essential elements of negligence, *i.e.,* duty, breach, causation and damages." *Reichelt,* at 769. The court added, however, that this does not mean that the plaintiff must be aware of a legal cause of action. *Reichelt,* at 769. The court determined that the plaintiff knew or reasonably should have known all the *facts* necessary to establish the elements of his negligence claim more than 3 years before he filed this action, and thus held that his claim was barred by the statute of limitations. *Reichelt,* at 768. I submit that in this case the plaintiffs, as in *Reichelt,* were on notice of all the facts necessary to, with due diligence, discover the cause of their injury.

RCW 4.16.350 which was the applicable statute before the court in *Ohler v. Tacoma Gen. Hosp., supra,* and *Sahlie v. Johns–Manville Corp., supra,* concerns itself with civil actions for damages for injury occurring as a result of health care against persons or corporations based upon alleged professional negligence which:

> shall be commenced within three years of the act or omission alleged to have caused the injury or condition, or one year of the time the patient or his representative *discovered or reasonably should have discovered that the injury or condition was caused by said act or omission,* whichever period expires later, except that in no event shall an action be commenced more than eight years after said act or omission[.]

(Italics mine.) RCW 4.16.350(3).

The provisions of RCW 7.72.030(3) intentionally differ from RCW 4.16.350 in that the product liability statute of limitations runs from the date of discovery of the harm and its cause (this case) as opposed to discovery of all of the essential elements of the cause of action (as required by *Ohler* and *Sahlie*). The provisions of RCW 7.72.060 clearly seek a reasonable conclusion as to the time wherein an action may be brought: three years from the time the claimant discovered or in the exercise of due diligence should have discovered the harm and its cause" as opposed to the idea that the claimant knew each and every element of his cause of action.

RCW 7.72.060(3) adopts the discovery rule in the context of product liability actions, stating that the statute of limitations does not begin to run until the claimant "discovered or in the exercise of due diligence should have discovered the harm and its cause." The majority adopts an expansive reading of this language, holding that the statute of limitations does not begin to run until claimant discovers, or should have discovered that the cause of his injury was an alleged defect in the product. Majority opinion, at 319. However, an analysis of the purposes behind the Washington product liability act (WPLA) and the legislative history behind the enactment of RCW 7.72.060(3) shows that this interpretation is erroneous.

The purpose of statutory construction is to ascertain and give effect to legislative intent. *Frank v. Fischer,* 108 Wn.2d 468, 473–74, 739 P.2d 1145 (1987). If the language of the statute is unambiguous, such construction is unnecessary, and the words of the statute will be given their plain and ordinary meaning. *Clark v. Horse Racing Comm'n,* 106 Wn.2d 84, 91, 720 P.2d 831 (1986); *In re Estate of Little,* 106 Wn.2d 269, 283, 721 P.2d 950 (1986). However, if the language of the statute is ambiguous, it may be necessary to resort to extrinsic aids in order to determine legislative intent. *Everett Concrete Prods., Inc. v. Department of Labor & Indus.,* 109 Wn.2d 819, 822, 748 P.2d 1112 (1988).

In this case, the issue centers around the interpretation of the word "cause". As noted by the majority, "'Cause' is a word with multiple connotations. Interpretation is more difficult because 'cause' has legal meanings as well." Majority opinion, at 326. Because of this ambiguity, it is appropriate, therefore, to turn to other sources besides the language of RCW 7.72.060(3) in order to ascertain the intent of the Legislature.

RCW 7.72.060(3) was enacted in 1981, as part of the Washington product liability act (WPLA). The WPLA is prefaced by a preamble, setting forth the purposes of the act. "Where the legislature prefaces an enactment with a statement of purpose . . ., that declaration, although without operative force in itself, nevertheless serves as an important guide in understanding the intended effect of operative sections." *Hartman v. State Game Comm'n,* 85 Wn.2d 176, 179, 532 P.2d 614 (1975). Thus, we may turn to the preamble as one means of ascertaining legislative intent.

The preamble states in part:

> Of particular concern is the area of tort law known as product liability law. Sharply rising premiums for product liability insurance have increased the cost of consumer and industrial goods. These increases in premiums have resulted in disincentives to industrial innovation and the development of new products. High product liability premiums may encourage product sellers and manufacturers to go without liability insurance or pass the high cost of insurance on to the consuming public in general.
>
> It is the intent of the legislature to treat the consuming public, the product seller, the product manufacturer, and the product liability insurer in a balanced fashion in order to deal with these problems.
>
> It is the intent of the legislature that the right of the consumer to recover for injuries sustained as a result of an unsafe product not be unduly impaired. It is further the intent of the legislature that retail businesses located primarily in the state of Washington be protected from the substantially increasing product liability insurance

costs and unwarranted exposure to product liability litigation.

Laws of 1981, ch. 27, § 1.

The majority has also relied on language from the preamble to the WPLA to support its position. See majority opinion, at 321. However, the majority overemphasizes the Legislature's intent to protect the consumer. As can be seen from the language quoted above, the Legislature also intended to protect retailers and manufacturers; to reach a fair balance between opposing interests.

The court may also look to legislative history as a means of ascertaining legislative intent. *Bellevue Fire Fighters, Local 1604 v. Bellevue,* 100 Wn.2d 748, 751, 675 P.2d 592 (1984), *cert. denied,* 471 U.S. 1015 (1985). As part of its committee report included in the Senate Journal, the Senate Select Committee on Tort and Product Liability Reform described the intended purpose of the new statute of limitations provision:

> This discovery rule is intended to modify the discovery rule pronounced inn [*sic*] *Ohler v. Tacoma General Hospital* , 92 Wn. 2d 507 (1979), which stated that the date of discovery meant the discovery of all of the essential elements of the cause of action, including duty, breach, causation, and damages. The concern about the *Ohler* formulation is that in practical terms it could mean that the statute of limitations would not begin running until the claimant consulted with an attorney since concepts of duty, breach and causation are uniquely legal concepts which a layperson would not ordinarily be expected to appreciate.

Senate Journal, 47th Legislature (1981), at 633–34. Additionally, as part of its findings, the committee stated that it

> carefully selected language relating to the statute of limitation in order to modify the discovery rule announced in *Ohler* . . . Because the discovery of all the essential elements of the cause of action is, practically speaking, beyond the understanding of the average layperson until he chooses to seek legal counsel, the *Ohler* rule unjustifiably extends the period during which an action may be brought. In utilizing the language "time of discovery of

the harm and its cause," the Committee intends to recreate a more reasonable and meaningful statute of limitations as to product liability claims.

Senate Journal, at 626.

It is clear from the legislative history that the Legislature intended to modify the discovery rule as set forth in *Ohler*. It is also clear that the Legislature intended to apply the statute of limitations more strictly in a product liability action by restricting the application of the discovery rule. Thus, the word "cause" in RCW 7.72.060(3) should be interpreted with this intent in mind. It is also necessary to consider the policies behind statutes of limitations in general and the discovery rule in particular.

The better approach is to hold that the statute of limitations period set forth in RCW 7.72.060(3) runs when the claimant discovers a connection between his injury and the product. This rule incorporates a discovery element—the limitations period does not begin to run until the claimant knows or should know that there is a relationship between his injury and the product. Such an interpretation complies with the language of RCW 7.72.060(3) providing for application of a discovery rule in product liability actions. It also satisfies the legislative intent to reduce the scope of the discovery rule as applied in *Ohler* and its progeny. Furthermore, the rule fulfills the purposes behind statutes of limitations by providing a definite point beyond which stale claims may not be brought. Finally, such an interpretation of RCW 7.72.060(3) achieves the objectives of the discovery rule by requiring claimants to exercise due diligence to discover a causal connection between their injury and a particular product in order to bring an action beyond the normal statute of limitations period.

Here the plaintiffs knew they were harmed and on notice that their injury came about because the plane crashed. The Legislature could have set a 1–year, a 2–year or a 6–year statute of limitations, but instead set 3 years as a reasonable outside limit for an injured party to establish what went wrong, if anything, with the product that brought

about the injury. There was no unknown harm or silent killer. The plaintiffs were not deluded, except by circumstance and their own lack of due diligence. The statute began to run as a matter of law when the airplane crashed. I would inform the District Court that under RCW 7.72-.060(3) there is no factual inquiry that need be made.

GOODLOE and DURHAM, JJ., concur with CALLOW, J.