**Yupadee STRICKLAND, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, et al., Defendants.**

**No. 92–NC–93–S.**

United States District Court, D. Utah, Northern Division.

May 6, 1994.

Douglas M. Durbano, Deanna M. Lasker, Durbano & Associates, Ogden, UT, for plaintiff.

H. James Clegg, Snow, Christensen & Martineau, Salt Lake City, UT, Gregory W. Aleshire, Springfield, MO, Rodney E. Loomer, Sherry A. Rozell, Turner Reid Duncan Loomer & Patton, Springfield, MO, J. Anthony Eyre, Kipp and Christian, Salt Lake City, UT, Dale J. Lambert, Christensen, Jensen & Powell, Salt Lake City, UT, for defendants.

## ORDER GRANTING DEFENDANT GENERAL MOTORS CORPORATION'S MOTION TO DISMISS

SAM, District Judge.

This matter came before the court on motion of the defendant General Motors Corporation ("GM") to dismiss the plaintiff's product liability claims against it for failure to comply with Utah's two-year statute of limitations, Utah Code Ann. § 78–15–3. For reasons discussed more fully below, the court agrees that these claims are time-barred.

### I. BACKGROUND

The plaintiff alleges that she was injured in a motor vehicle accident in Davis County, Utah, on August 9, 1989. She filed her complaint in this action on August 31, 1992, asserting strict liability, negligence, and breach of warranty claims against the manufacturer of her own vehicle, GM, and a negligence claim against the other driver and his

employers. (The plaintiff filed an amended complaint on July 7, 1993, adding a party defendant but asserting the same claims against GM.)

As the factual basis for her claims against GM, the plaintiff alleges that she was wearing her seat belt, which was attached to the door of the car, but the belt failed to restrain her when the door flew open upon impact, and she was thrown out of the car.

The plaintiff concedes that in August 1990 she received a recall notice from GM regarding the "seat belt assembly anchorages" in her vehicle, a 1989 Pontiac Cutlass. (Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss, at 4–5 & 7.) As part of the "Reason for Recall," GM explained that "[t]he upper guide loop attachment fastener for the front seat shoulder belts could pull through the anchor plate at a load lower than that required by the [Motor Vehicle Safety] Standard. In an accident, if the fastener pulls through the anchor plate, the shoulder belt would not correctly restrain the occupant." (*Id.*, Ex. B.)

The recall notice is simply dated "August 1990." *Id.* However, a mailing record submitted by GM indicates that the notice was mailed to the plaintiff's home address by first class mail, sometime between August 6 and August 13, 1990. (Ex. A, Defendant's Reply Memorandum.)

## II. DISCUSSION

■ The defense of a statute of limitations may be raised by a motion to dismiss, but Fed.R.Civ.P. 12(b) permits the court to treat the motion as one for summary judgment where the parties have submitted affidavits or other documents outside the pleadings. 2A J. Moore, J. Lucas, & G. Grotheer, *Moore's Federal Practice* ¶ 12.10 (1994). Summary judgment should be granted if the pleadings, affidavits, and other documents of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

GM argues that it is entitled to judgment because all the claims against it are barred by Utah Code Ann. § 78–15–3, which provides:

> A civil action under this chapter [the Product Liability Act] shall be brought within two years from the time the individual who would be the claimant in such action discovered, or in the exercise of due diligence should have discovered, both the harm and its cause.

(effective April 24, 1989).

The plaintiff responds that she only discovered "the harm and its cause" less than two years before she commenced this action. Thus, the court will consider whether there is a genuine issue of material fact as to when the plaintiff discovered her cause of action. Before doing so, however, the court will address an issue not discussed in the parties' memoranda: whether § 78–15–3 is applicable to all the plaintiff's claims against GM, including those claims which are based on theories of negligence or breach of warranty.

### A. Scope of Utah's statute of limitations for products liability claims

■ Utah's Product Liability Act does not define "product liability" or related terms. The term generally refers to "the legal liability of manufacturers and sellers to compensate buyers, users, and even bystanders, for damages or injuries suffered because his product has a defective condition...." *Black's Law Dictionary* (6th Ed.).

Oregon law defines "product liability civil action" as:

> a civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or property damage arising out of:
> (1) Any design, inspection, testing, manufacturing or other defect in a product ...

Or.Rev.Stat. § 30.900.

Accordingly, a number of federal courts have determined that "the Oregon legislature intended to include all products-related claims within the breadth of its products liability statute." *Bancorp Leasing & Fin. Corp. v. Augusta Aviation Corp.*, 813 F.2d 272, 277 (9th Cir.1987) (affirming the dismissal of claims against the manufacturers of a helicopter based on theories of strict liability,

negligence, and breach of warranty, as barred by Oregon's two-year product liability statute of limitations). *See also Philpott v. A.H. Robins Co., Inc.,* 710 F.2d 1422 (9th Cir.1983) (affirming the dismissal of product liability claims based on theories of negligence, strict liability, breach of warranty, fraudulent misrepresentations, and wanton and willful misconduct, as barred by Oregon's product liability statute of limitations).

■ Although Utah's Product Liability Act does not define "product liability," the Act refers broadly to "a product liability action against a product manufacturer, wholesaler or retailer" and creates a rebuttable presumption regarding defects, which applies in "any action for damages for personal injury, death, or property damage allegedly caused by a defect in a product." Utah Code Ann. § 78–15–4 & –6. This language suggests that the Utah legislature likewise intended that all claims against a manufacturer, based on a defective product, be subject to § 78–15–3, regardless of the theory alleged.

### B. When the plaintiff discovered her harm and its cause

Section 78–15–3 explicitly incorporates a discovery rule; a products liability claim accrues when the claimant "discovered, or in the exercise of due diligence should have discovered, both the harm and its cause." The Utah Court of Appeals explained that "cause" in this context does not necessarily equate with the traumatic event but refers to the " 'cause in fact,' i.e., the design defect that caused the harm." *Aragon v. Clover Club Foods Co.,* 857 P.2d 250, 253 (Utah App.1993).

In *Aragon,* the court observed that § 78–15–3 is "identical in all material respects" to a Washington statute of limitations, Wash. Rev.Code § 7.72.060(3). *Id.* at 253. Thus, the court followed a case interpreting the Washington statute, *North Coast Air Servs., Ltd. v. Grumman Corp.,* 111 Wash.2d 315, 759 P.2d 405 (1988).

*North Coast* was a suit against the manufacturer of an airplane for injuries and death occasioned by a crash. Investigating authorities at first attributed the crash to pilot error, but nearly ten years later, the plaintiffs found evidence of a defective elevator linkage. The United States District Court for Western Washington certified the question whether the limitation in § 7.72.060(3) "begin[s] to run as soon as an injury occurs in which a product is involved, or is it a question of fact to determine when 'in the exercise of due diligence' the product's relationship to the injury should have been discovered." 759 P.2d at 405.

The Washington Supreme Court looked to the legislative history of the statute of limitations and found that the task force which developed the statute thought it would "extend[ ] the limitation period *beyond the time of harm in situations where the claimant would have no reason to know about the harm or the causal connection to a defective product* (e.g., the case of long-term pharmaceutical harms)." 759 P.2d at 410–11 (emphasis added). The Court concluded that the question whether plaintiffs in due diligence should have discovered the cause of the harm was an unresolved question of fact, because:

> On this record, there are no facts which causally connected the product to the harm. Plaintiff had no more reason to believe that there was any defect in the aircraft than to believe or disbelieve the accuracy of the official investigation that the cause of the harm was pilot error and not the result of mechanical defect.

*Id.* 759 P.2d at 411. *See also Bridgewaters v. Toro Co.,* 819 F.Supp. 1002 (D.Utah 1993) (the question whether the purchaser of a lawnmower discovered or should have discovered a defect in the lawnmower, and that the defect was the legal cause of an injury to her eye, was a material issue of fact which precluded summary judgment).

On this record, however, there *are* facts which causally connected the product to the harm at the time of the accident. This is not a situation where the plaintiff had no reason to know about the harm or the causal connection to the defective product. The defect in the seat belt should have been apparent to the plaintiff at or near the time when the belt failed to restrain her and she was thrown from the car. The alleged harm should have

also been apparent, to some degree, at the time of the accident. *See McKinnon v. Tambrands, Inc.*, 815 F.Supp. 415 (D.Utah 1993) (limitation on products liability claims accrues when the injury first manifests itself, not when the plaintiff ascertains the full extent of her injuries).

The plaintiff in *McKinnon* suffered from Toxic Shock Syndrome (TSS) and filed products liability claims against the manufacturer of the tampons she used. The manufacturer moved for summary judgment on the basis that the claims were barred by the two-year limitation in § 78–15–3; the plaintiff responded that she did not discover her cause of action until she received an official confirmation of her TSS episode. After acknowledging the majority rule that "when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question of fact for the jury," the court reasoned that the determination could be made as a matter of law in that case because:

> [T]he record demonstrates conclusively that Plaintiff discovered, or in the exercise of due diligence should have discovered, both her injury and its cause more than two years prior to the filing of her claim. The record before the court establishes that Plaintiff discovered the harm (her physical illness) by July 17, 1989, at the latest, when she was hospitalized. The record also establishes that she discovered the cause (TSS caused by Defendant's tampons) by July 27, 1989, at the latest, when she saw Dr. Peterson for a follow-up examination.... Dr. Peterson "told [her] that in his opinion [she] had toxic shock and to never use tampons again.

815 F.Supp. at 418–19. *See also Marshall v. AC & S Inc.*, 56 Wash.App. 181, 782 P.2d 1107 (1989) (affirming the trial court's order granting summary judgment for a manufacturer of asbestos products under Washington's statute of limitations, § 7.72.060(3), where the record showed that the plaintiff discovered that his exposure to asbestos caused his respiratory ailment on his first visit to a medical center, more than three years before he commenced his products liability claim).

■ In this case, even if the defect in the seat belt had not been apparent at the time of the accident, the record indicates that the plaintiff should have known of the defect when she received the recall notice from GM regarding the seat belt assembly anchorages. The plaintiff does not dispute that GM mailed that notice to her no later than August 13, 1990, or that she received it in due course (less than 18 days thereafter). Rather, she states in her affidavit, "When I received this notice I made no connection between the defect identified in the notice and the fact that my vehicle's restraint system, if defective, could have been a cause of my injuries ..." (¶ 5, Affidavit of Yupadee Strickland). Since the notice plainly informed customers that "In an accident, if the [front shoulder belt] fastener pulls through the anchor plate, the shoulder belt would not correctly restrain the occupant" (Ex. to Plaintiff's Memorandum in Opposition to Motion), the record demonstrates conclusively that plaintiff *should have* discovered the cause of her injuries by the time that notice was received, whether she actually made the connection or not. *See* Utah Code Ann. § 78–15–3.

Accordingly, the plaintiff's claims against GM, filed on August 31, 1992, were untimely.

### C.  Costs

■ GM has also asked for an award of its costs. A prevailing party is normally entitled to an award of costs, as of course, under Fed.R.Civ.P. 54(d)(1). 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 54.70[3] (1994). In accordance with that rule and Local Rule 211, GM should submit a bill of its taxable costs to the clerk of court within twenty (20) days after the entry of this order.

### III.  CONCLUSION

IT IS HEREBY ORDERED that GM's motion to dismiss is deemed a motion for summary judgment, that GM is granted summary judgment on all the plaintiff's claims against it, and that GM is awarded its taxable costs.