Corinne **BRIDGEWATERS**, Plaintiff,

v.

**TORO COMPANY, Defendant.**

Civ. No. 91–CV–1261 A.

United States District Court,
D. Utah, C.D.

April 29, 1993.

Samuel King, Salt Lake City, UT, for plaintiff.

Jesse Trentadue, J. Michael Hansen, Suitter, Axland, Armstrong & Hanson, Salt Lake City, UT, for defendant.

## · ORDER DENYING TORO COMPANY'S MOTION FOR SUMMARY JUDGMENT

ALDON J. ANDERSON, Senior District Judge.

Defendant Toro Company (hereafter "Toro") has asked this court, pursuant to Federal Rule of Civil Procedure 56, to grant summary judgment dismissing the product liability complaint of plaintiff Corinne Bridgewaters (hereafter "Bridgewaters") because of the alleged applicability of Utah's two year product liability statute of limitations, Utah Code Anno. § 78–15–3 (1992). Bridgewaters opposed the motion, and oral argument was heard.

Having carefully considered the matter, and having undertaken its own research as to the applicability of Utah Code Ann. § 78–15–3, the court is persuaded that issues of material fact preclude the granting of summary judgment.

### I. *Background.*

On July 5, 1984, Bridgewaters, a widow and grandmother of three, purchased a used lawn mower designed and manufactured by Toro. The lawnmower did not come with a grass bagger. Bridgewaters generally did not use the lawnmower herself, but relied upon the kindness of neighbors and her grandchildren, who lived with her, to use the mower to cut her lawn.

On April 23, 1989, Bridgewaters was observing a neighbor use the lawnmower, when a rock or other object was struck by the mower blades and hurled out of the grass ejection chute.[1] The object struck Bridgewa-

---

1. In deposition testimony, Bridgewaters states that just prior to being struck in the eye, she heard something ricocheting from the mower blades. Based on that, Bridgewaters testified that she guessed the object had come from the mower. Toro has denied in its pleadings that the

ters in the left eye, severely damaging it. Various eye operations were unable to save the eye, and blindness resulted.

Accepting the lawnmower incident as "one of life's accidents," Bridgewaters went back to work as a social worker at the University of Utah Medical Center [2] and continued to care for her grandchildren. Unfortunately, those tasks became increasingly difficult as a result of the loss of her vision in the left eye, and worsening cataracts in the right eye.

Some time after the incident, Bridgewaters was talking with another social worker, when the subject of Bridgewaters' eye injury came up.[3] The other social worker suggested that Bridgewaters should contact an attorney to see if she had a case against Toro. Bridgewater contacted an attorney, and the lawnmower was inspected by a lawnmower mechanic in April, 1990.

The mechanic found that the accident occurred as a result of a broken plastic latch, about the size of a pencil eraser, which failed to keep the lawnmower's grass ejection door closed when a grass bagger was not in use. The ejection door was placed on the lawnmower by Toro to prevent objects from being shot out of the grass chute like bullets. The mechanic further informed Bridgewaters, through her attorney, that other lawnmowers did not use plastic to keep the ejection door closed, but relied upon springs and metal.

Having determined the cause of the accident, Bridgewaters authorized her attorney to negotiate with Toro. When those negotiations failed, Bridgewaters filed her lawsuit

against Toro on December 6, 1991, approximately two and three quarter years after the April 23, 1989, incident.

Toro argues that Bridgewaters' lawsuit is filed beyond the two year product liability statute of limitations set forth in Utah Code Ann. § 78–15–3 (1992), which went into effect the day after the accident. Bridgewaters counters that the lawsuit is timely under the four year statute of limitations set forth in Utah Code Ann. § 78–12–25(3), which was applicable to product liability actions on the date of the accident. In the alternative, Bridgewaters argues that § 78–15–3 did not begin to run until April 1990 when she knew the legal cause of the accident.

## II. *Discussion*

### A. Standard of Review

Summary judgment is appropriate only when the moving party can show that there is no genuine issue of material fact, and that the party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). In reviewing the evidence presented, the court is to construe all facts, and reasonable inferences therefrom, in favor of the non-moving party. *Lindley v. Amoco Production Co.*, 639 F.2d 671, 672 (10th Cir. 1981).[4] This is true, even though it might appear, weighing the evidence, that the moving party has the stronger case. For purposes of summary judgment, the court does not weigh the evidence. Instead, the court examines the evidence to determine if a rea-

object came from the mower itself, and at oral argument counsel for Bridgewater made reference to claims by Toro in discovery that the mower could not have been the source of thrown object. For purposes of this motion, it is assumed that the mower was the source of the thrown object.

2. Bridgewaters assists families to cope with emotional problems incident to catastrophic injury or disease of a family member.

3. The exact time when Bridgewaters talked with the other social worker, and began investigating the cause of the accident, is unclear from the record. Affidavits of Bridgewaters and her counsel indicate that she did not contact the attorney's office until 1991. However, a letter from Bridgewaters' attorney to Toro, dated August 27,

1991, indicates that Bridgewaters contacted the attorney in December of 1989, and that in April of 1990, the defective nature of the lawnmower was discovered. It is possible that the unauthenticated letter contains typographical errors. Nonetheless, for purposes of the motion, the court will use the dates set forth in the letter.

4. Where the non-moving party presents conflicting facts, such as Bridgewaters has done in this court, see footnote 3, the court should technically use those facts, supported by admissible evidence, which would defeat summary judgment. Let the jury, or the court in a case tried before the bench, sort out the more credible story. On the other hand, where, as in this case, the court is persuaded that summary judgment is inappropriate under either set of facts, then an analysis can be undertaken using either set of facts.

sonable jury could return a verdict in favor of the nonmoving party. If it can, summary judgment must be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Clifton v. Graig*, 924 F.2d 182, 183 (10th Cir.), *cert. denied*, —— U.S. ——; 112 S.Ct. 97, 116 L.Ed.2d 68 (1991).

While the foregoing hurdle, in favor of summary judgment is high, it is not insurmountable. As the United States Supreme Court states: "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient," to defeat summary judgment. *Anderson v. Liberty Lobby, Inc*, 477 U.S. at 252, 106 S.Ct. at 2512. Further, if, after a reasonable time has passed for discovery, it can be shown that the nonmoving party cannot present evidence to show an essential element to that party's case, then summary judgment is available. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).[5] Finally, summary judgment is appropriate to resolve issues of law, such as the meaning of statutes, and whether or not such statutes preclude the bringing of an action.

■ The applicability of statutes of limitation are frequently the subject of motions for summary judgment. Such statutes are passed "to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Myers v. McDonald*, 635 P.2d 84, 86 (Utah 1981) quoting *Order of Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). In ruling on such motions, however, the Tenth Circuit Court of Appeals has warned:

While cases involving statute of limitations defenses frequently lend themselves to summary disposition, a court should not grant summary judgment for the defendant if there is a viable issue of fact as to when the limitation period began. *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith*, 494 F.2d 168, 171 (10th Cir.1974); 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2734, at 421 (2d ed. 1983).

*Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). This is especially true where the applicability of the statute of limitation to a case turns on the factual "issue of when a plaintiff knew or with reasonable diligence should have known of a cause of action." *Id.* at 1387–88.

### B. The Applicability of Utah Code Ann. § 78–15–3.

Toro argues that Bridgewaters' suit is barred as a matter of law because the suit was filed beyond the time requirement set forth in Utah Code Ann. § 78–15–3. That statute provides:

STATUTE OF LIMITATION. A civil action under this [Product Liability] chapter shall be brought within two years from the time the individual who would be claimant in such action discovered, or in the exercise of due diligence should have discovered, both the harm and its cause.

■ The effective date of the foregoing statute of limitations was April 24, 1989, the day after Bridgewaters' accident. Because the statute was not effective on the date of the accident, Bridgewaters argues that the two year period set forth therein is not applicable to this case. Bridgewaters asserts that the timeliness of the lawsuit should be judged by Utah Code Ann. § 78–12–25(3) which provides for a four year statute of limitations.[6]

---

5. Rule 202(b)(4) of the Rules of Practice for the United States District Court for the District of Utah provides that all material facts asserted by a moving party are deemed admitted unless specifically controverted by the opposing party. If adequate time has not passed for the nonmoving party to gather evidence to oppose summary judgment, relief can sought under F.R.C.P. 56(f). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

6. Utah Code Ann. § 78–12–25(3) provides a four year statute of limitations for "action[s] ... not otherwise provided by law." Prior to April 24, 1989, the effective date of present Utah Code Ann. § 78–15–3, there was no statute of limitation specifically in place for product liability lawsuits. The previous product liability statute of limitations was found by the Utah Supreme Court to be unconstitutional, under the Utah Constitution, as a statute of repose. *See Rai-*

While it would seem reasonable that a plaintiff should not be bound by a statute of limitations whose effective date is after the incident which gives rise to a cause of action, the Utah Supreme Court has held to the contrary.

In *Greenhalgh v. Payson City*, 530 P.2d 799 (Utah 1975), the Utah Supreme Court held that the legislature could change statutes of limitation for existing causes of action so long as the new statute provided a reasonable time to bring a lawsuit. In that case, the trial court dismissed an action under a two year medical malpractice statute of limitations even though the statute was passed over a year after the alleged malpractice, and specifically stated that the statute was not meant to be retroactive. The Utah Supreme Court agreed with the trial court. The Court stated:

> It is well established that the legislature may reduce a period of limitation and apply a new and shorter period to previously accrued causes of action, so long as a reasonable time is allowed to bring such an action; and that the effect of the new statute commences upon the effective date of the statute. The result of this is actually prospective in that the statutory change relates to procedure to occur in the future.

*Id.* at 803.[7]

Utah Code Ann. § 78–15–3 provides two years to bring a product liability action. Two years is a "reasonable time," as that concept is discussed in *Greenhalgh v. Payson City*, 530 P.2d 799 (Utah 1975). Consequently, the court finds that Utah Code Ann. § 78–15–3 is applicable to Bridgewaters' product liability cause of action against Toro. *See Canadian Indemnity Co. v. K & T, Inc.*, 745 F.Supp. 661, 663 (D.Utah 1990); *Day & Night Heating Co. v. Ruff*, 19 Utah 2d 412, 432 P.2d 43, 44 (1967) (one year statute of limitations provided a reasonable time within which to commence causes of action which accrued prior to its enactment).

## C. Commencement of the Running of the Limitation Period Set Forth in Utah Code Ann. § 78–15–3

Having determined that the two year statute of limitation set forth in Utah Code Ann. § 78–15–3 is controlling, the court must now determine when the statute of limitation commences to run.

■ Generally, statutes of limitation commence "upon the last event necessary to complete the cause of action." *Myers v. McDonald*, 635 P.2d 84, 86 (Utah 1981). Further, "mere ignorance of the existence of the cause of action does not prevent the running of the statute of limitation." *Id.*

The foregoing general rule is subject to exceptions, however. *Id.* at 86. *See also Warren v. Provo City Corp.*, 838 P.2d 1125, 1129 (Utah 1992). The exceptions provide that a statute of limitations will not preclude suit if (1) the discovery rule is incorporated into the express language of the statute, (2) where the defendant has concealed facts or misled the plaintiff, and (3) where there exists exceptional circumstances that would make the application of the general rule irrational or unjust. *Warren* at 1129.

The second and third exceptions to the general rule, "concealment" and "exceptional circumstances," however, are subject to the limitation that the exceptions are *not* available to a plaintiff who is aware of facts giving rise to a cause of action before the expiration of the normal running of the statute of limitation. Thus, in *Brigham Young Univ. v. Paulsen Constr. Co.*, 744 P.2d 1370, 1374 (Utah 1987), the Utah Supreme Court refused to toll a statute of limitation in favor of a university that discovered construction defects in sufficient time to bring a lawsuit

---

*thaus v. Saab–Scandia of America*, 784 P.2d 1158, 1161–62 (Utah 1989); *Berry v. Beech Aircraft*, 717 P.2d 670 (Utah 1985).

**7.** Bridgewaters cites *McGuire v. Univ. of Utah Med. Center*, 603 P.2d 786 (Utah 1979) for the proposition that the Utah Supreme Court would not apply Utah Code Ann. § 78–15–3 retroactively to pre-existing causes of action. This court does not agree. A close reading of *McGuire*

indicates that the Utah Supreme Court's holding therein is based upon statutory language that the particular act in question was to apply only to causes of action after the effective date of the statute. Indeed, a review of *Foil v. Ballinger*, 601 P.2d 144 (Utah 1979), cited in *McGuire*, confirms that absent restrictive statutory language, statutes of limitation will be applied to pre-existing causes of action.

against a contractor before the normal running of the applicable statute of limitations. Similarly, in *Atwood v. Sturm, Ruger & Co.,* 823 P.2d 1064, 1065 (Utah 1992) the Utah Supreme Court refused to allow use of a common law discovery rule in a product liability case, under the old four year statute of limitations, Utah Code Ann. § 78–12–25(3), where the plaintiff was aware of his injuries and possible cause of action against the manufacturer before the expiration of the statute of limitation.

The foregoing limitation does not apply, however, to the first exception to the general rule, that being where the discovery rule is expressly made a part of the applicable statute of limitations. As noted by the Utah Supreme Court in *Myers v. McDonald,* 635 P.2d 84, 86 (Utah 1981), "[i]n some enumerated areas of the law, [the Utah] Legislature has adopted the discovery rule by statute *so that the limitations period does not begin to run until discovery of facts forming the basis for the cause of action."* (Emphasis added.) *See also Allred v. Chynoweth,* 990 F.2d 527, 529 (10th Cir.1993) (statutory discovery exception delays accrual of the cause of action).[8]

In Utah Code Ann. § 78–15–3, the Utah Legislature made the discovery rule an integral part of the product liability statute of limitations. The statute states the two year limitation period runs "from the time the individual who would be the claimant in such action *discovered, or in the exercise of due diligence should have discovered, both the harm and its cause."* *Id.* (Emphasis added.) Indeed, unlike other Utah statutes of limitation, which statutorily incorporate a discovery rule, the product liability statute of limitations expressly provides that the plaintiff's discovery must go not only to the fact of the injury itself but also to the cause of the injury.[9]

■ In this case it is clear that Bridgewaters was aware of her injury at the time of the incident, April 23, 1989. She knew that an object had stuck her left eye and that it required medical care. There is a dispute, however, as to when Bridgewaters discovered, "or in the exercise of due diligence should have discovered" the *cause* of the injury. "Cause" is not defined in the statute.[10]

Toro argues that because Bridgewaters knew, or should have known, that the object which blinded her left eye was thrown by the Toro lawnmower, she knew the *cause* of her injury, and that the statute of limitations began to immediately run. Bridgewaters disagrees and argues that she only guessed that the object came from the lawnmower, and that until she discovered a defect in the lawnmower, she could not bring a claim against Toro. Bridgewaters further asserts that the statute of limitations did not commence until she consulted a mechanic/expert who discovered the defective plastic latch which allowed the object to thrown by the lawnmower.

The Utah Supreme Court has not yet interpreted Utah Code Ann. § 78–15–3. This court is persuaded, however, that if the issue were presented to that court, it would not

---

8. For the reasons set forth in this order, Toro's reliance upon *Atwood v. Sturm, Ruger & Co.,* 823 P.2d 1064 (Utah 1992), in support of its Motion for Summary Judgment is misplaced. The fact that Bridgewaters may have been aware of her facts sufficient to bring a claim against Toro in 1990 does not mean she had to bring her action within two years of the adoption of Utah Code Ann. § 78–15–3. It simply means that the statute of limitations commenced to run in 1990. Even if *Atwood* was controlling, a question of fact remains as to when Bridgewaters discovered facts sufficient for her cause of action. See footnote 3 *supra.*

9. *Compare* Utah Code Ann. § 78–15–3 ("discovered, both the harm and its cause") *with* Utah Code Ann. § 78–12–19 ("discovery of the fraud or other lawful grounds"); Utah Code Ann. § 78–12–26(3) ("discovery by the aggrieved party of the facts constituting the fraud or mistake"); Utah Code Ann. § 78–12–27 ("discovery ... of the facts upon which the penalty or forfeiture attached"); Utah Code Ann. § 78–14–4 ("discovered the injury").

10. Courts have noted that there is a difference between a "cause" and a "condition." *North Coast Air Services, Ltd. v. Grumman Corp.,* 111 Wash.2d 315, 759 P.2d 405, 408 (1988). The word "cause" has legal meaning. *Id.,* 759 P.2d at 410. Where a statute of limitations is ambiguous, it should be given the meaning which properly protects the interests of injured parties and does not deprive them of their day in court. *See Berry v. Beech Aircraft,* 717 P.2d 670 (Utah 1985).

accept the position urged by Toro.[11]

Toro would have this court determine that the statute of limitation for product liability, Utah Code Ann. § 78–15–3, commences to run as soon as the plaintiff "learns that he or she has been harmed by the defendant's product." Reply Memorandum in Support of Motion at 8. Toro argues that it is not necessary for plaintiff to know why the product caused the harm, or how defendant has violated any legal duty owed to plaintiff. Instead, Toro asserts that Bridgewaters could have immediately filed suit against Toro, and then relied upon "interrogatories, requests for admissions, document requests and depositions as well as opinions of experts to develop a case against The Toro Company." *Id.* at 10 n. 2.

Such an approach cannot be countenanced by this court. Not only does the approach ignore the requirements of Federal Rule of Civil Procedure 11,[12] but it ignores the differences between a knowledge of a cause and the mere suspicion of cause. In *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381 (1985), the Tenth Circuit Court of Appeals reversed a grant of summary judgment by Judge David Winder, of this court, which had dismissed a wrongful death suit against an uranium processing plant as having been filed beyond the applicable statute of limitations. Writing for the Tenth Circuit, Judge Monroe McKay stated that the common law discovery rule tolled the Utah wrongful death statute of limitation.

The discovery rule tolls the statute of limitations until the plaintiff knows or should know of the facts constituting the cause of action, (citations omitted), including the fact of causation. There is a substantive difference between knowledge of causation and mere suspicion. (Citation omitted.) The statute cannot start running when the plaintiff merely knows or should know that there is a suspected link between a particular substance and cancer in general.... A rule that the statute begins to run as soon as a plaintiff becomes aware that a particular substance is suspected to cause cancer in some people would be absurd, for it would force the plaintiff to file suit against all suspected sources of carcinogens simply to prevent the statute from running. A plaintiff who did so, without further support for the allegation ... would be susceptible to dismissal on grounds of frivolity.

*Id.* at 1387.

■ This is not to say that a plaintiff can sit around and do nothing after he or she has been harmed. Utah Code Ann. § 78–15–3 requires that a plaintiff exercise due diligence to determine the cause of the harm. Whether a plaintiff has exercised due diligence, under all of the circumstances of the case, is a question of fact. *Id.* at 1387–88.

■ Even if a plaintiff has not exercised due diligence, however, the court must make a determination of when a reasonable plaintiff should have discovered the cause of the harm.[13] It is from that point in time, and not

11. After oral argument, Toro referred this court to the Memorandum Decision and Order of Judge David Winder, of this court, in *McKinnon v. Tambrands, Inc.*, 815 F.Supp. 415, wherein a Motion for Summary Judgment was granted to a defendant as a result of a lawsuit being filed beyond the time period set forth in Utah Code Ann. § 78–15–3. The decision is not helpful in this case, however, as the underlying facts of *McKinnon* are significantly different from the instant case. In *McKinnon* Judge Winder found as a matter of law that plaintiff knew of both her injury *and* its cause more than two years prior to commencing her suit. He found that plaintiff had been told by a doctor that she was suffering from Toxic Shock Syndrome and that she should no longer use defendants' products. Because of that advice, the court determined that she had knowledge that a claim could be brought against the defendant, but failed to act on that knowl-

edge within the next two years by filing a lawsuit.

12. The rule provides that the signer of a pleading must certify that "to the best of the signer's knowledge, information, and belief *formed after a reasonable inquiry* it is well grounded in fact and is warranted by existing law." (Emphasis added.)

13. In arriving at this determination, the court should consider the circumstances of the plaintiff, such as her ability to get around and to obtain advice, the type of product defect (manufacture or design), whether the defect is obvious or hidden, and whether or not a reasonable investigation would have revealed sufficient facts that a lawsuit could be filed without violating the minimum requirements of Federal Rule of Civil Procedure 11.

the incident itself, that the statute of limitations set forth in Utah Code Ann. § 78–15–3 commences to run.[14] In doing so, the "cause" which must be discovered is the legal cause, and not merely the "but for" cause.

In *North Coast Air Services, Ltd. v. Grumman Corp.*, 111 Wash.2d 315, 759 P.2d 405 (1988), the Washington Supreme Court addressed the precise issue before this court. In that case, the United States District Court for Western Washington certified the question of whether or not the state's product liability statute of limitations, which in all important respects is identical to Utah's, ran from the date of an accident in which a product was involved, or whether it was a question of fact as to "when 'in the exercise of due diligence' the product's relationship to the injury should have been discovered, with the statute of limitations running from that date." *Id.* The Washington Supreme Court held that it was a question of fact. *Id.*, 759 P.2d at 411.

The Washington court noted that the product liability statute of limitation was derived from a model uniform product liability act promulgated by the Department of Commerce. 44 Fed.Reg. 62,714–62,750 (1979). *North Coast Air Services, Ltd.*, 759 P.2d at 410. The commentary to that act noted, with regard to the statute of limitation section,

> [The section] extends the limitation period beyond the time of harm in situations where the claimant would have no reason to know about the harm *or the causal connection to a defective product.*

Quoted at *Id.*, 759 P.2d at 411. (Emphasis added by Washington court.) The Washington Supreme Court further noted its agreement with the statement of a legal writer that

> It would appear that the statute does not begin to run upon mere discovery that a "product" caused an injury; the discovery provision [of the product liability statute of limitation] would be triggered upon discovery that a "defective product" caused the injury.

*Id.*, 759 P.2d at 410, quoting McGovern, *The Status of Statutes of Limitations and Statutes of Repose in Product Liability Actions: Present and Future*, 16 Forum 416, 425 (1980–81).

This court agrees with the interpretation of the product liability statute of limitations set forth in *North Coast Air Services, Ltd. v. Grumman Corp.*, 111 Wash.2d 315, 759 P.2d 405 (1988). Any other interpretation, such as that presented by Toro, would place an injured party in a possible Catch 22 situation of having to file a lawsuit against a manufacturer of a product without evidence that the manufacture's product is defective, or face losing the lawsuit due to passage of the applicable statute of limitations. In either event, the injured party would face dismissal of the lawsuit, and possible sanctions under Federal Rules of Civil Procedure 11, not to mention the possible risk of an adverse judgment for attorney fees under Utah Code Ann. § 78–27–56.[15]

As stated by Circuit Judge McKay in *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985):

> [S]tatutes of [limitation] are designed to insulate the judicial process against action which, once crystallized, have then grown old and stale, through the passage of time.

---

**14.** Of course, if the facts show that the discovery of the cause and the harm are contemporaneous, then the statute would commence to run upon the occurrence of the incident. However, it is the court's experience that it usually takes some time after an accident to determine if a cause of action exists against some defendant.

**15.** A literal adoption of Toro's interpretation of Utah Code Ann. § 78–15–3 might also lead to the statute being struck down as unconstitutional, see footnote 6. As noted by the Utah Supreme Court:

> It may be properly conceded that all statutes of limitations must proceed on the idea that the

party has a *full opportunity* to try his rights in the courts. A statute could not bar existing rights of claimants without affording this opportunity; *if it should do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily*, whatever might by the purport of its provisions.

*Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 672 (Utah 1985), quoting *Wilson v. Iseminger*, 185 U.S. 55, 62, 22 S.Ct. 573, 575, 46 L.Ed. 804 (1902). Because the court has rejected Toro's restrictive interpretation of Utah Code Ann. § 78–15–3, however, there is no need for this court to address the constitutional issue.

They are not intended to stimulate the filing of actions arising from injuries or causes that have not been rationally identified.

### III. *Conclusion*

The product liability statute of limitations, Utah Code Ann. § 78–15–3 is applicable to Bridgewaters lawsuit against Toro, even though the statute was not effective until after the incident which gave rise to the lawsuit. Material issues of fact exist, however, as to when Bridgewaters discovered, or in the exercise of due diligence should have discovered, the defective nature of Toro's lawnmower and that said lawnmower was the legal cause of her injury.

Toro's Motion for Summary Judgment is denied.