[No. 45547.   En Banc.   June 14, 1979.]

HARRY WATTERS, *Appellant,* v. CHARLES P. DOUD, ET AL, *Respondents.*

318

*Hubbard & Burns, Inc., P.S.,* by *Jack R. Burns,* for appellant.

*John A. Tidwell,* for respondents.

WILLIAMS, J.—This is an appeal from a judgment entered by the trial court quashing appellant Watters' writ of garnishment and awarding attorney fees to respondent Doud. We affirm.

The uncontroverted facts giving rise to this controversy are as follows:

In 1961, Charles and Judith Doud were married. In October of 1970, Charles Doud signed a promissory note on behalf of himself and the marital community in favor of Watters payable in monthly installments commencing January 1971. In 1972, he divorced Judith, and on June 11, 1973, he married Katherine. Doud made payments on the note until mid–1976, although many of the payments were less than the amount called for and not timely according to

the strict terms of the note. On December 13, 1976, Watters commenced suit on the note. Doud answered the complaint and as an affirmative defense alleged that the obligation, if due, was not the responsibility of the present Doud community composed of himself and Katherine Doud, and their property was not subject to his separate obligations. In June 1977, Watters obtained a judgment against Charles Doud individually, and in July against the community composed of him and his former wife Judith for the unpaid balance on the note plus interest and attorney fees.

In October 1977, Watters caused a writ of garnishment to issue and served it on Doud's employer, the Tacoma News Tribune (TNT). The TNT thereafter filed an answer in which it acknowledged owing money to Charles Doud for wages. Doud answered by way of an affidavit, alleging that the funds being held were community funds of his and his present wife Katherine, and were therefore not subject to garnishment based on his and the former community's liability. The matter was heard on Watters' motion for summary judgment. The motion was denied, and judgment was entered quashing the writ and assessing attorney fees against Watters.

The issues raised by the foregoing facts are: (1) whether RCW 26.16.200 should be read together with RCW 4.16-.270, the partial payment statute, to allow Watters as garnishor to reach community assets on an antenuptial separate debt when a judgment on the debt is obtained within 3 years after the last partial payment, but not within 3 years after marriage; (2) whether Doud was entitled to attorney fees at trial under RCW 7.33.290 or any other section; (3) whether Watters is entitled to attorney fees on appeal.

RCW 26.16.200, as amended in 1969, provides that:

Neither husband or wife is liable for the debts or liabilities of the other incurred before marriage, nor for the separate debts of each other, nor is the rent or income of the separate property of either liable for the separate debts of the other: *Provided,* That the earnings and

accumulations of the husband shall be available to the legal process of creditors for the satisfaction of debts incurred by him prior to marriage, and the earnings and accumulations of the wife shall be available to the legal process of creditors for the satisfaction of debts incurred by her prior to marriage. For the purpose of this section neither the husband nor the wife shall be construed to have any interest in the earnings of the other: *Provided further,* That no separate debt may be the basis of a claim against the earnings and accumulations of either a husband or wife unless the same is reduced to judgment within three years of the marriage of the parties.

The 1969 amendment to the act is contained within the two provisos of the statute.

Watters' first contention is that RCW 26.16.200 should be read together with RCW 4.16.270, the partial payment statute, to allow a garnishor to reach community assets on an antenuptial separate debt when judgment on the debt is obtained within 3 years after the last partial payment but not within 3 years after marriage.

He contends that the purpose of the first proviso of the 1969 amendment was to provide an absolute right to effect legal process on the wages of a spouse for separate liabilities subject only to the general statute of limitation. He further argues that the second proviso is in the nature of a statute of limitation which limits the right conferred by the first proviso. He therefore concludes that RCW 4.16.270, the partial payment statute, applies to the second proviso as it would to any statute of limitation.

RCW 4.16.270 provides:

When any payment of principal or interest has been or shall be made upon any existing contract, whether it be a bill of exchange, promissory note, bond or other evidence of indebtedness, if such payment be made after the same shall have become due, the limitation shall commence from the time the last payment was made.

In applying the partial payment statute to RCW 26.16-.200, Watters asserts that partial payments which Doud made on the debt tolled the statute of limitation. The effect of such an interpretation would be to extend the time

period within which Watters could reduce his claim to a judgment enforceable against community assets from 3 years after marriage to 3 years after the last payment was made on the debt.

We reject Watters' interpretation of RCW 26.16.200. Instead, we rule that the second provision of that statute is not a statute of limitation and that RCW 4.16.270 has no application to it. ˋ

██ A statute of limitation is defined as the action of the State in determining that, after the lapse of a specified time, a claim shall not be enforceable in a judicial proceeding. 51 Am. Jur. 2d *Limitations of Actions* § 2, at 592 (1970). RCW 4.16, which deals with the limitation of actions, sets out time limits after which actions *may not be commenced.* RCW 26.16.200 has no effect on the time period during which Watters' cause of action must be commenced in order to be judicially enforceable. Rather, it limits the time period during which a judgment must be obtained so as to be enforceable against a specified fund, the community assets. It is therefore not a statute of limitation and is not affected by the tolling statute, RCW 4.16-.270. Since the indebtedness was not reduced to judgment within 3 years after marriage, it is not enforceable against the community assets.

██ Furthermore, we reject Watters' claim that the 1969 amendment was intended to eliminate marital bankruptcy and should be interpreted so as to effectuate that purpose. Provisos operate as limitations upon the general terms of the statute to which they are appended and, as such, generally should be strictly construed with any doubt to be resolved in favor of the general provisions rather than exceptions. *State v. Wright,* 84 Wn.2d 645, 529 P.2d 453 (1974). The general statute is that which was in effect prior to the 1969 amendment; it provided that community property could not be reached to satisfy the separate obligations of either spouse. *See Escrow Serv. Co. v. Cressler,* 59 Wn.2d 38, 365 P.2d 760 (1961).

The effect of the general statute prior to the 1969 amendment was that immediately upon a debtor's marriage, a creditor lost the ability to enforce the claim against the new marital community. This rule was harsh, but it served "to assure the community enough integrity to allow development without handicaps unrelated to its own undertakings." 45 Wash. L. Rev. 192 (1970).

The 1969 amendment is made up entirely of provisos to the general statute. The sounder view is that the amendment was meant to *alleviate* the harsh effects of the previous law but was not intended to make community assets vulnerable for an indefinite period of time. We believe that the amendment serves to soften the effect of the main provision in that the creditor is no longer faced with marital bankruptcy from the moment of the debtor's marriage. Rather, pursuant to the amendment, a creditor is entitled to either 3 years of payments on the debt after the marriage from community assets or in the case of default, he may reduce his claim to judgment within 3 years of the marriage to reach community assets during the life of the judgment. This interpretation gives effect to the amendment without defeating the clear provisions of the general statute.

Watters further asserts that respondent is equitably estopped from raising the defense of the limitations provision of the second proviso of RCW 26.16.200. Estoppel in pais is available to prevent an improper use of the statute of limitation. *Central Heat, Inc. v. Daily Olympian, Inc.*, 74 Wn.2d 126, 134, 443 P.2d 544, 44 A.L.R.3d 750 (1968). In that case we held:

> The equitable doctrine of estoppel in pais is applicable in a proper case to prevent a fraudulent or inequitable resort to the statute of limitations as a defense. . . . One such situation exists where the defendant conceals facts or otherwise induces the plaintiff not to bring suit within the period of the applicable statute of limitations.

(Citations omitted.)

Watters argues that he had no knowledge of respondent's divorce and remarriage. He asserts that respondent

made regular monthly payments on the indebtedness during the 3–year period in which it could have been reduced to judgment and that these payments lulled him into a sense of security. He therefore concludes that it would be inequitable and unjust to require him to reduce his claim to judgment within the 3 years of respondent's remarriage.

There is no evidence that Doud concealed facts, induced Watters not to bring suit, or acted fraudulently. In fact, the evidence indicates that many of the payments were in amounts less than what was called for by the terms of the note, and many payments were not timely. These defaults would have allowed Watters to obtain a judgment against the earnings and accumulations of Charles Doud within 3 years of his marriage to Katherine. It can hardly be said under the facts of this case that he was lulled into a sense of security by Doud's noncompliance with the terms of the contract. Furthermore, we imply no duty to disclose a future marriage, nor do we equate failure to disclose a present marriage with concealment. Therefore, the application of equitable estoppel is neither required nor appropriate here.

Finally, Watters contends that the trial court erred in awarding attorney fees to respondent on the basis of RCW 7.33.290, which provides:

> Where the answer is controverted the costs of the proceeding, including a reasonable compensation for attorney's fees, shall abide the issue of such contest: *Provided,* That no costs or attorney's fees in such contest shall be taxable to defendant in the event of a controversion on the part of plaintiff.

He points out that the statute authorizes the award of attorney fees only when the *answer* is controverted, but not, as here, when the legitimacy of the writ is attacked resulting in it being quashed. He asserts that the garnishee's answer was correct and that Doud's affidavit did not controvert it; rather, the writ itself was quashed because the funds sequestered were not subject to garnishment on the basis of the underlying judgment.

RCW 7.33 sets out the procedures to be followed in garnishment proceedings and provides that upon being served with a writ of garnishment the garnishee must answer and disclose what funds, if any, he holds that are due or owing to a defendant. He must serve the answer on a defendant, RCW 7.33.150, who may thereafter controvert it by way of affidavit. RCW 7.33.250. The issue is thus formed and the matter then tried. RCW 7.33.260. At the hearing, a defendant is entitled to interpose all defenses he or she may have to a garnishment, including that the funds held by a garnishee are not subject to garnishment to satisfy the underlying judgment. It is apparent from the wording of RCW 7.33.290 and the overall intent of the garnishment statutes that the reference to controversion of a garnishee's answer includes any defenses a defendant might have to a garnishment and is not limited to a determination of whether the amount of money listed in the answer is the precise amount owed by a garnishee to a defendant.

We therefore hold that Doud controverted the answer of the garnishee within the meaning of the statute and having succeeded in the trial on the merits was entitled to attorney fees.

Watters also asks this court to award him attorney fees on appeal on the basis that the promissory note underlying the garnishment provides for attorney fees in the event an action for collection is instituted. Watters was awarded attorney fees in the original action on the note, and it would not be appropriate to award fees for this appeal in view of the fact that he has not prevailed in this court and especially since the proceedings to garnish respondent's wages were instituted by him at a time when he was aware that the funds were not subject to garnishment.

The judgment of the trial court is affirmed in all respects.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.