[No. 41545-3-II.   Division Two.   June 29, 2012.]

TED SHOULBERG ET AL., *Appellants*, v. PUBLIC UTILITY DISTRICT NO. 1 OF JEFFERSON COUNTY, *Respondent*.

*David A. Bricklin* and *Claudia M. Newman* (of *Bricklin & Newman LLP*), for appellants.

*Donald S. Cohen* and *James E. Horne* (of *Gordon Thomas Honeywell LLP*), for respondent.

¶1 PENOYAR, J. — Ted Shoulberg and Charles Haniford brought a class action suit on behalf of themselves and others similarly situated (collectively Owners), challenging a tax levied by Jefferson County Public Utility District Number 1 (District). The Owners appeal the trial court's order granting the District's summary judgment motion and denying the Owners' summary judgment motion. The Owners argue that the expenditures the District made constitute "provision of a water utility" and, therefore, duplicate the city of Port Townsend's (City) water utility operations, in violation of RCW 54.04.030. The District contends it may levy taxes on city residents to pay for other expenses, such as regional water planning. The District also argues that the Owners failed to comply with procedural requirements before bringing their action and that the doctrine of laches bars their action. We hold that the District's tax levy did not violate RCW 54.04.030. We affirm.

## FACTS

¶2 The District is a countywide public utility district that includes the City. The District provides water and sewer services to residents living outside the City. The City, meanwhile, operates its own water and sewer utilities. The District is developing electrical and telecommunication utilities in its entire service area, including the City's residents. The City does not provide electrical or telecommunication utilities. In 1996, the District levied an annual tax on all real estate within the District, including within the City.

¶3 The District divides its operating budget into two funds. The utility fund, 82 percent of the District's budget,

is funded by utility customer fees. The general fund is funded almost exclusively by the District's property tax. The District uses the general fund to pay for watershed planning functions; community involvement and education; general and administrative costs, such as a percentage of the insurance cost, utilities, and accounting services; percentages of personnel and benefit costs; and expenses related to water and sewer studies.

¶4 In 2005, the District purchased property including Peterson Lake. It acquired no water rights with the purchase. The District uses the general fund to maintain and secure Peterson Lake.

¶5 The Owners each own property in the City. The Owners brought a class action suit against the District to obtain a declaratory judgment and injunctive relief, declaring that the District's tax levy violates RCW 54.04.030. The Owners also sought reimbursement of back taxes paid. But no party paid taxes under protest as RCW 84.68.020 provides or filed a claim for refund as RCW 84.69.130 requires. The purported class includes those persons who own real property in the City.

¶6 The Owners moved for summary judgment, contending that RCW 54.04.030 prohibits the District from using tax revenue generated from property inside the City to support any of the District's utilities that the City duplicates. The District also moved for summary judgment, contending that the tax revenue is not used to support its utility service.

¶7 The trial court granted the District's summary judgment motion and denied the Owners' motion. The Owners appeal.

ANALYSIS

¶8 For the Owners to succeed here, they would have to demonstrate that some of the funds raised by the tax are used for "any utility, or part thereof, of like character to [the

City's] utility." RCW 54.04.030. Thus, the nub of this case is whether the Owners produced evidence showing that the District's tax-funded activities duplicate the City's utility activities. In pursuing this inquiry, we must give a narrow reading to the concept of a "utility . . . of like character" because it is part of a proviso. We conclude that the Owners have failed to establish such a question of fact.

## RCW 54.04.030

### A. Standard of Review

¶9 We review a trial court's summary judgment decision de novo, performing the same inquiry as the trial court. *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 708, 153 P.3d 846 (2007); *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We view all facts in the light most favorable to the nonmoving party. *Jones*, 146 Wn.2d at 300. Summary judgment is proper only if reasonable persons could reach but one conclusion from the evidence presented. *Bostain*, 159 Wn.2d at 708. The moving party bears the initial burden to show the absence of a material factual issue. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The nonmoving party cannot merely claim contrary facts and may not rely on speculation, argumentative assertions that unresolved factual issues remain, or on affidavits considered at face value.[1] *Meyer v. Univ. of Wash.*, 105 Wn.2d 847, 852, 719 P.2d 98 (1986).

---

[1] The Owners argue that the trial court's findings and conclusions are superfluous given our de novo review. We agree. *See Hubbard v. Spokane County*, 146 Wn.2d 699, 706 n.14, 50 P.3d 602 (2002) ("Although the trial court entered findings of fact, because summary judgment motions are reviewed de novo, these findings are superfluous and need not be considered."). But we will consider whether those facts were uncontroverted or conceded at summary judgment. *See Duckworth v. City of Bonney Lake*, 91 Wn.2d 19, 22, 586 P.2d 860 (1978) ("[O]ur review must be

## B. The Statute and Its Interpretation

■ ¶10 A tax statute must be construed as a whole to ascertain the legislative intent. *Grp. Health Coop. of Puget Sound, Inc. v. Dep't of Revenue*, 106 Wn.2d 391, 401, 722 P.2d 787 (1986).

¶11 RCW 54.04.030, titled "Restrictions on invading other municipalities," states:

> Chapter 1, Laws of 1931, shall not be deemed or construed to repeal or affect any existing act, or any part thereof, relating to the construction, operation and maintenance of public utilities by irrigation or water-sewer districts or other municipal corporations, but shall be supplemental thereto and concurrent therewith. No public utility district created hereunder shall include therein any municipal corporation, or any part thereof, where such municipal corporation already owns or operates all the utilities herein authorized: PROVIDED, that in case it does not own or operate all such utilities it may be included within such public utility district for the purpose of establishing or operating therein such utilities as it does not own or operate: PROVIDED, FURTHER, *That no property situated within any irrigation or water-sewer districts or other municipal corporations shall ever be taxed or assessed to pay for any utility, or part thereof, of like character to any utility, owned or operated by such irrigation or water districts or other municipal corporations.*

(Emphasis added.) We must determine whether the statute permits the tax at issue here.

■■ ¶12 Public utility districts are municipal corporations. RCW 54.04.020; *Sundquist Homes, Inc. v. Snohomish County Pub. Util. Dist. No. 1*, 140 Wn.2d 403, 410, 997 P.2d 915 (2000). " 'Municipal authorities cannot exercise powers except those expressly granted, or those necessarily implied from granted powers.' " *Sundquist Homes, Inc.*, 140 Wn.2d at 410 (quoting *Pac. First Fed. Sav. & Loan Ass'n v. Pierce*

---

limited to considering only the uncontroverted facts developed by the pleadings, or by factual concessions made in the City's brief.").

*County*, 27 Wn.2d 347, 353, 178 P.2d 351 (1947)). And "[i]f there is a doubt as to whether the power is granted, it must be denied." *Port of Seattle v. Wash. Utils. & Transp. Comm'n*, 92 Wn.2d 789, 795, 597 P.2d 383 (1979).

¶13 Laws of 1931, chapter 1 was passed as an initiative. *See State ex rel. Pub. Util. Dist. No. 1 of Skagit County v. Wylie*, 28 Wn.2d 113, 128, 182 P.2d 706 (1947). Rules of statutory construction similarly apply when we construe a statute enacted by the initiative process. *Jane Roe v. TeleTech Customer Care Mgmt. (Colo.), LLC*, 171 Wn.2d 736, 746, 257 P.3d 586 (2011). In such situations, we must determine the intent of the voters who enacted the measure. *Roe*, 171 Wn.2d at 746. We focus on the statutory language " 'as the average informed voter voting on the initiative would read it.' " *Roe*, 171 Wn.2d at 746 (quoting *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 205, 11 P.3d 762 (2001)). If the voters' intent is clear, we need not look further. *Amalgamated Transit Union Local 587*, 142 Wn.2d at 205 ("Where the language of an initiative enactment is 'plain, unambiguous, and well understood according to its natural and ordinary sense and meaning, the enactment is not subject to judicial interpretation.' " (quoting *State v. Thorne*, 129 Wn.2d 736, 762-63, 921 P.2d 514 (1996))). An ambiguity exists if statutory language is subject to more than one reasonable interpretation. *Roe*, 171 Wn.2d at 746-47.

¶14 In the context of providing electricity and related services, a public utility district's powers are liberally construed. Laws of 1931, ch. 1, § 11; *Sundquist Homes, Inc.*, 140 Wn.2d at 410. Liberally construing a statute requires that any exceptions be narrowly confined. *Pub. Util. Dist. No. 1 of Clark County v. Pub. Emp't Relations Comm'n*, 110 Wn.2d 114, 119, 750 P.2d 1240 (1988); *Nucleonics Alliance, Local Union No. 1-369 v. Wash. Pub. Power Supply Sys.*, 101 Wn.2d 24, 29, 677 P.2d 108 (1984) ("A policy requiring liberal construction is a command that the coverage of an act's provisions be liberally construed and

that its exceptions be narrowly confined."). Provisos operate as limitations on or exceptions to the general terms of the statute to which they are appended and, as such, generally, should be strictly construed with any doubt to be resolved in favor of the general provisions, rather than the exceptions. *State v. Wright*, 84 Wn.2d 645, 652, 529 P.2d 453 (1974).

¶15 We now turn to the proviso in RCW 54.04.030 limiting when a public utility district may tax property and analyze whether it precludes taxing the Owners for the Peterson Lake activities. We hold that it does not because when applying a narrow construction to the proviso, the Peterson Lake activities do not duplicate the City's water utility activity.

C. Application of RCW 54.04.030

¶16 Under RCW 54.04.030, a public utility district may not tax the property within another municipal corporation to provide a certain utility service if that other corporation owns and operates the same utility. As our Supreme Court explained in *Public Utility District No. 1 of Whatcom County v. Superior Court*:

> From this section, it clearly appears that it is not the intent of the law that a utility district may, within the boundary of a municipal corporation, duplicate utilities already owned or operated by the municipality, and assess the property within the boundaries of such municipal corporation for such duplication. The territory embraced within the limits of the cities may be included within the utility district, because the cities do not own or operate all of the utilities contemplated by Laws of 1931, chapter 1, but their property cannot be taxed to construct, purchase or support public utility district utilities already owned or operated by the cities.

199 Wash. 146, 158-59, 90 P.2d 737 (1939). But our Supreme Court also suggested that a public utility district providing several services can tax properties within another municipal corporation for those services that the municipality does not provide, as long as the public utility district segregates

the revenue obtained from that tax in its budget and does not spend that revenue on duplicative utility services. *Whatcom County*, 199 Wash. at 158-59.

¶17 The Owners argue that the purchase and maintenance costs for Peterson Lake mimic the City's water utility activity. But under a narrow construction of "a utility . . . of like character," not every action the District takes that relates tangentially to the District's water utility duplicates that utility. If the District provided water from the lake to its water customers, the Owners would have a persuasive argument. Under a narrow reading of the phrase "water utility," however, the lake's aquifer-protecting functions do not make it part of the District's water utility that duplicates any City utility function. Similarly, watershed planning and conservation activities do not fall within a narrow definition of a "water utility." Finally, costs related to studies for potential future sewer systems and for onsite sewage disposal system inspections do not constitute provision of a utility service; the Owners therefore fail to show that those expenditures duplicate any City sewer utility functions.

¶18 RCW 54.04.030 sought to prevent a taxpayer from paying twice for the same utility services, and we conclude that is not happening here. RCW 54.04.030 restricts none of the District's activities funded by the tax. We affirm the trial court's grant of summary judgment to the District.[2]

¶19 Affirmed.

JOHANSON, A.C.J., and HUNT, J., concur.

Review denied at 175 Wn.2d 1024 (2012).

---

[2] Because we hold that the Owners' claims fail, we do not address the District's arguments that the Owners are procedurally barred from seeking a refund and that the laches doctrine applies.