# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| BURIEN TOWN SQUARE CONDOMINIUM ASSOCATION, a Washington non-profit corporation, | No. 76502-7-I |
| Appellant, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| BURIEN TOWN SQUARE PARCEL 1, LLC, a Washington limited liability company; and BURIEN TOWN SQUARE, LLC, a Washington limited liability company; and JOHN DOES 1-100, | |
| Respondents. | FILED: May 14, 2018 |

LEACH, J. — Burien Town Square Condominium Association (Association) sued Burien Town Square LLC and Burien Town Square Parcel 1 LLC (collectively BTS) for alleged violations of the Washington Condominium Act (WCA)[1]. The Association appeals the trial court's dismissal of those claims as barred by the statute of limitations. Because a period of declarant control tolled the statute of limitations, we reverse and remand for further proceedings consistent with this opinion.

---

[1] Ch. 64.34 RCW.

No. 76502-7-I / 2

## FACTS

BTS developed and owned a condominium complex in Burien. BTS substantially completed its construction by May 1, 2009. BTS sold the first unit on May 19, 2009. On July 8, 2009, the city of Burien issued a certificate of occupancy for the condominium.

In November 2009, BTS defaulted on its construction loan. The lender foreclosed. On November 2, 2010, BTS Marketing (Marketing) acquired the condominium as part of a settlement agreement. Marketing continued to sell units. It kept control of the building's operation by retaining the right to appoint the board of directors of the condominium association.

In August 2013, the Association, which Marketing still controlled, received notice of a construction defect. The Association took no action at that time.

In March 2014, unit owners first made up the majority of the board and gained control of the Association. On February 26, 2015, the Association notified BTS and Marketing about certain construction defects and asked for them to be fixed. On April 29, 2015, the Association filed several claims against BTS, including claims under the WCA. BTS moved for summary judgment, asserting that the statute of limitations barred the WCA claims. The trial court agreed and dismissed the WCA claims. We denied the Association's request for discretionary review. At the Association's request, the trial court dismissed the

-2-

No. 76502-7-I / 3

Association's remaining claims. This allowed the Association to appeal the dismissal of its WCA claims.

## STANDARD OF REVIEW

We review a trial court's order granting summary judgment de novo.[2] Summary judgment is appropriate if, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law.[3]

Because statutory interpretation presents a question of law, we also review it de novo.[4] The purpose of statutory interpretation is to determine the intent of the legislature.[5] When interpreting a statute, we first look to its plain language.[6] If a statute's language is plain, we will determine the legislature's intent from the words of the statute itself.[7]

---

[2] Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794, 64 P.3d 22 (2003).
[3] Michak, 148 Wn.2d at 794-95.
[4] Agrilink Foods, Inc. v. Dep't of Revenue, 153 Wn.2d 392, 396, 103 P.3d 1226 (2005).
[5] Campbell v. Dep't of Soc. & Health Servs., 150 Wn.2d 881, 894, 83 P.3d 999 (2004).
[6] HomeStreet, Inc. v. Dep't of Revenue, 166 Wn.2d 444, 451, 210 P.3d 297 (2009).
[7] Agrilink Foods, 153 Wn.2d at 396.

ANALYSIS

Statute of Limitations

The Association contends that the statute of limitations does not bar its claims because certain provisions in the WCA tolled the limitations period until after the Association filed its claim. We agree.

The WCA has a four-year statute of limitations for construction defects.[8] But this statute does not bar an action for breach involving a common element of the condominium until one year after the period of declarant control ends.[9] The statute states that an action

> must be commenced within four years after the cause of action accrues: PROVIDED, That the period for commencing an action for a breach accruing pursuant to subsection (2)(b) of this section shall not expire prior to one year after termination of the period of declarant control, if any, under [RCW 64.34.308(5)].[10]

Section (2)(b) provides that a cause of action involving a common element accrues at the latest of three dates: (1) when the first unit was conveyed to a bona fide purchaser, (2) when the common element was completed, or (3) when the common element was added.[11]

Here, the Association's WCA claims involve the common elements of the condominium. The parties agree that BTS conveyed the first unit on May 19,

---

[8] RCW 64.34.452(1).
[9] RCW 64.34.452(1), (2)(b).
[10] RCW 64.34.452(1).
[11] RCW 64.34.452(2)(b).

-4-

2009. They also agree that construction was complete and all common elements were added and completed by July 8, 2009, the date the city of Burien issued the certificate of occupancy. Thus, the Association's cause of action accrued no later than July 8, 2009.

BTS contends that the statute of limitations expired in July 2013. If correct, this means that the Association's WCA claims, filed on April 29, 2015, are barred. The Association responds that the statute of limitations would have expired one year after the period of declarant control ended but was extended an additional 105 days, to June 11, 2015, by its giving written notice of its claims.

The phrase "period of declarant control" describes the period when a condominium developer retains control over the condominium unit owners' association.[12] "Declarant control' means the right of the declarant or persons designated by the declarant to appoint and remove officers and members of the board of directors, or to veto or approve a proposed action of the board or association."[13]

To create a condominium, the owner, as the "declarant," must record a declaration with certain information, including a description of the property and information about ownership.[14] The WCA defines a declarant as

---

[12] RCW 64.34.308(5)(a).
[13] RCW 64.34.020(16).
[14] RCW 64.34.020(15), .200, .216.

[a]ny person who is the owner of a fee interest in the real property which is subjected to the declaration at the time of the recording of an instrument pursuant to RCW 64.34.316 and who directly or through one or more affiliates is materially involved in the construction, marketing, or sale of units in the condominium created by the recording of the instrument.[15]

Primarily, the parties dispute how long, for purposes of the statute of limitations, the period of declarant control lasted in this case. BTS asserts that the period of declarant control ended when its own control ended. The Association contends that the period of declarant control continued so long as any declarant, not just BTS, controlled the composition of the board. We agree with the Association.

The Association relies on RCW 64.34.316.[16] The statute addresses what happens to declarant rights in a foreclosure: "[t]he declarant ceases to have any special declarant rights."[17] Whoever acquires the property succeeds to all special declarant rights.[18] It also addresses the effect of a foreclosure on the period of declarant control: "[t]he period of declarant control as described in

---

[15] RCW 64.34.020(15)(d).

[16] BTS asserts that because the Association cites this provision for the first time on appeal, we should not consider it. But although courts generally do not consider new issues raised for the first time on appeal, they may consider new authorities. RAP 2.5(a); Zonnebloem, LLC v. Blue Bay Holdings, LLC, 200 Wn. App. 178, 183 n.1, 401 P.3d 468 (2017). Further, we determine the legislature's intent by looking at the statute as a whole. Muckleshoot Indian Tribe v. Dep't of Ecology, 112 Wn. App. 712, 720-21, 50 P.3d 668 (2002). This provision relates to the main issue disputed below and on appeal, and we consider it.

[17] RCW 64.34.316(4)(a).

[18] RCW 64.34.316(3).

[RCW 64.34.308(5)] terminates unless the judgment or instrument conveying title provides for transfer of all special declarant rights held by that declarant to a successor declarant."[19] Here, after the foreclosure, BTS transferred special declarant rights to Marketing as part of the settlement with its lender. BTS does not dispute that Marketing acquired all declarant rights in the condominium. Thus, under RCW 64.34.316, the period of declarant control continued after Marketing took over as declarant.

The statutory interpretation urged by the Association advances the strong consumer protection component of the WCA.[20] A principal purpose of the WCA is to provide protection to residential buyers of condominiums.[21] When an original declarant transfers declarant rights to a successor declarant, it remains liable for the original construction.[22] But BTS's interpretation would allow an original declarant to avoid liability by conveying property to a successor declarant and having the successor declarant keep control over the board until the statute

---

[19] RCW 64.34.316(4)(b).

[20] Eagle Point Condo. Owners Ass'n v. Coy, 102 Wn. App. 697, 713, 9 P.3d 898 (2000).

[21] Filmore LLLP v. Unit Owners Ass'n of Ctr. Pointe Condo., 183 Wn. App. 328, 343 & n.10, 333 P.3d 498 (2014); Park Ave. Condo. Owners Ass'n v. Buchan Devs., LLC, 117 Wn. App. 369, 374-75, 71 P.3d 692 (2003).

[22] One Pac. Towers Homeowners' Ass'n v. HAL Real Estate Invs., Inc., 148 Wn.2d 319, 332, 61 P.3d 1094 (2002) ("A transferor is not relieved of any obligation or liability arising before the transfer and remains liable for warranty obligations imposed upon the transferor by this chapter.'" (quoting RCW 64.34.316(2)(a))).

of limitations expires. While the successor declarant might have liability for breach of its fiduciary duties owed unit owners, that remedy might provide incomplete relief for unit owners depending on a variety of variables, including the capitalization of the successor and the unit owner's date of acquisition. Thus, adopting BTS's interpretation of the period of declarant control would create a loophole in the WCA's protection for unit owners.

BTS complains about the unfairness of leaving an original declarant open to liability under the WCA indefinitely, subject only to certain actions by a successor declarant. It also claims that the Association's interpretation frustrates the purpose of a statute of limitation, noting that "[t]he purpose of statutes of limitations is to shield defendants and the judicial system from stale claims."[23] But a statute of limitation should only protect against stale claims and not provide a shield from almost all liability. We reject an interpretation of the WCA that would allow a statute of limitations for claims involving condominium common elements to expire before the unit owners ever gain control of the unit owners' association.

Both the language of the WCA and public policy concerns support our conclusion that the period of declarant control is a single period measured by the fact of declarant control, not the term of a specific declarant's control. Thus, the

---

[23] Burns v. McClinton, 135 Wn. App. 285, 293, 143 P.3d 630 (2006).

period of declarant control continued after BTS transferred control of the board to Marketing as successor declarant. We consider the parties' arguments about the end of the period of declarant control in light of this conclusion.

The WCA contains specific rules about the end of declarant control. The declaration can provide a date for the end of the period of declarant control.[24] But the WCA also provides for an end of the period of declarant control.[25] RCW 64.34.308(5)(b) specifically states that a period of declarant control ends no later than the earlier of

> (i) Sixty days after conveyance of seventy-five percent of the units which may be created to unit owners other than a declarant; (ii) two years after the last conveyance or transfer of record of a unit except as security for a debt; (iii) two years after any development right to add new units was last exercised; or (iv) the date on which the declarant records an amendment to the declaration pursuant to which the declarant voluntarily surrenders the right to further appoint and remove officers and members of the board of directors.

The Association contends that the period of declarant control ended on March 1, 2014, when unit owners first gained control of the Association (section 308(5)(b)(i)). BTS contends that the period of declarant control ended either on November 2, 2010, when it last had ownership and declarant rights (section 308(5)(b)(iv)) or on November 2, 2012, two years after BTS last exercised any

---

[24] See RCW 64.34.308(5)(a).
[25] RCW 64.34.308(5)(b).

development rights (section 308(5)(b)(iii)). We address these contentions chronologically.

First, BTS contends that the period of declarant control ended on November 2, 2010. RCW 64.34.308(5)(b)(iv) states that the period of declarant control ends on "the date on which the declarant records an amendment to the declaration pursuant to which the declarant voluntarily surrenders the right to further appoint and remove officers and members." BTS contends that it surrendered control when Marketing became the owner. But the plain language of this provision requires that the declarant record an amendment to the declaration in which the declarant surrenders declarant rights. BTS never recorded such an amendment. Further, although BTS gave up the power to appoint and remove officers in November 2010, Marketing acquired that right. The unit owners did not gain control but remained subject to the control of a declarant. We conclude that the condition described in section 308(5)(b)(iv) did not occur when Marketing became successor declarant.

Alternatively, BTS contends that the period of declarant control ended on November 2, 2012. RCW 64.34.308(5)(b)(iii) states that the period of declarant control ends "two years after any development right to add new units was last exercised."

BTS asserts that it never exercised any development rights after November 2010, when it lost its rights. But it incorrectly equates exercising its rights with transferring its rights. The exercising of rights is not synonymous with transferring rights. "Exercise" means "[t]o make use of" or "to implement the terms of."[26] "Transfer" means "[t]o convey or remove from one place or one person to another; to pass or hand over from one to another, esp[ecially] to change over the possession or control of."[27] The exercise of a development right does not include a transfer of those rights. Nor does the WCA's definition of development rights indicate that conveying property to a successor declarant results in the end of the period of declarant control. The WCA defines "development rights" as

> any right or combination of rights reserved by a declarant in the declaration to: (a) Add real property or improvements to a condominium; (b) create units, common elements, or limited common elements within real property included or added to a condominium; (c) subdivide units or convert units into common elements; (d) withdraw real property from a condominium; or (e) reallocate limited common elements with respect to units that have not been conveyed by the declarant.[28]

BTS identifies no language in the WCA suggesting, let alone stating, that transferring these rights constitutes an exercise of development rights under

---

[26] BLACK'S LAW DICTIONARY 693 (10th ed. 2014).
[27] BLACK'S at 1727.
[28] RCW 64.34.020(18).

section 308(5)(b)(iii). Thus, the condition described in section 308(5)(b)(iii) did not occur when BTS transferred development rights to Marketing.

The parties agree that the period of declarant control ended no later than March 2014. RCW 64.34.308(5)(b)(i) states that the period of declarant control ends 60 days after the conveyance of 75 percent of the units to unit owners other than a declarant. In January 2014, Marketing notified the Association that 75 percent of the units in the building had been sold to individual owners. On March 1, 2014, a majority of the Association board members were unit owners. Because the period of declarant control ended in March 2014, the time for filing a WCA claim expired in March 2015, unless otherwise extended.[29]

The Association claims its written claim to BTS extended the statute of limitations an additional 105 days to June 11, 2015, relying on RCW 64.50.020 and RCW 64.34.452(4). BTS provides no argument to the contrary. We agree with the Association.

RCW 64.50.020(1) provides that in a construction defect action, the claimant must provide notice to the construction professional 45 days before filing a lawsuit. The claimant cannot file an action until that 45 days has passed.[30] RCW 64.34.452(4) tolls the statute of limitations until 60 days after this 45 day period. It states,

---

[29] RCW 64.34.452(1)
[30] RCW 64.50.020(1); see also RCW 64.34.452(4).

-12-

> If a written notice of claim is served under RCW 64.50.020 within the time prescribed for the filing of an action under this chapter, the statutes of limitation in this chapter and any applicable statutes of repose for construction-related claims are tolled until sixty days after the period of time during which the filing of an action is barred under RCW 64.50.020.

The Association gave notice to BTS on February 26, 2015, within the time for filing a WCA action. Thus, the statute of limitations tolled until 105 days later, June 11, 2015.[31] The Association timely filed its complaint on April 29, 2015, before the statute of limitations expired.

### Attorney Fees

The Association challenges the trial court's award of fees to BTS. The WCA permits the court to award, "in an appropriate case," reasonable attorney fees to the prevailing party:

> If a declarant or any other person subject to this chapter fails to comply with any provision hereof or any provision of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief. The court, in an appropriate case, may award reasonable attorney's fees to the prevailing party.[32]

In view of our decision, no party has yet prevailed on the WCA claims, so neither party has established an entitlement to fees in the trial court. We vacate the trial court's award of fees.

---

[31] The Association claims that the statute of limitations tolled until June 10, but this is based on the date on the notice letter (February 25), not the date the letter was delivered (February 26).

[32] RCW 64.34.455.

-13-

Both parties request fees on appeal. Although the Association prevails here, no party has yet prevailed on the merits of the WCA claims. Thus, an award of fees is premature. But the Association is entitled to an award of costs upon its compliance with the applicable court rules.

## CONCLUSION

We reverse. The period of declarant control tolled the statute of limitations contained in RCW 64.34.452. The Association timely filed its WCA claims. We reverse and remand for further proceedings consistent with this opinion.

_Leach, J._

WE CONCUR:

_Mann, A.C.J._

_Dwyer, J._