**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| WASHINGTON TRUST BANK, | No.  56982-5-II |
| Respondent, | |
| v. | |
| KYLE K. KOZAK, | PUBLISHED OPINION |
| Appellant. | |

LEE, P.J. — Kyle Kozak appeals the superior court's order denying his exemption claim to Washington Trust Bank's (Washington Trust) writ of garnishment on his account at iQ Credit Union.  Kozak claims that the account was exempt from garnishment because the account contained community property assets.

Washington Trust obtained a judgment against Kozak in November 2011.  He married his current spouse in 2016.  RCW 26.16.200 provides that a creditor on a premarital, separate debt may collect on community property assets so long as the creditor reduced its claim to judgment "within three years of the marriage . . . of the parties."  Kozak argues that RCW 26.16.200 requires that the judgment be obtained within three years before the marriage or within three years after the marriage.  We conclude that RCW 26.16.200 applies so long as the creditor reduced its claim to judgment any time before three years after the debtor's marriage.  Because Washington Trust did that here, we affirm the superior court.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56982-5-II

FACTS

In 2007, Kyle Kozak owned and operated a general contracting construction company in Oregon. Kozak constructed and sold homes on a speculative basis. In May 2007, Kozak took out two loans, for $840,000 and for $276,000, from Pinnacle Bank of Oregon to fund his construction projects. Kozak personally guaranteed the loans.

In 2008, due to the financial crash, Kozak could not complete his construction projects, nor could he pay back his loans. In 2009, Pinnacle Bank closed, and Washington Trust bought and assumed Pinnacle's deposits and loans.

In January 2010, Kozak filed for Chapter 7 bankruptcy. Kozak listed Washington Trust as a creditor. However, in May 2010, the bankruptcy trustee brought an action against Kozak in U.S. Bankruptcy Court to "obtain a determination of the various interests in certain property, to disregard certain sham entities, . . . and to avoid and recover the Debtor's fraudulent and/or preferential transfer of assets." Clerk's Papers (CP) at 104. Specifically, the trustee alleged:

> Prior to the Petition Date, the Debtor engaged in significant cash transactions and is believed to frequently have in his possession large quantities of cash which he stored in shoe boxes. Additionally, the Debtor had amassed a substantial amount of both titled and untitled personal property, including collector's cars, motorcycles, vintage snowmobiles, arcade games, BMX bicycles and bicycle parts, art collections, vintage wine collection, Diecast cars, Nascar memorabilia, and memorabilia associated with the Star Wars films. . . . The Debtor also acquired a substantial firearm collection . . . [and] numerous automobiles . . . .
>
> . . . .
>
> . . . The Debtor used and/or conspired with certain affiliates and family members . . . to hold either title to, or possession of, some of the Debtor's Collectibles, in a scheme to avoid payment of federal and state income taxes, judgment creditors, and lenders.

2

No. 56982-5-II

CP at 105-06. Based on the trustee's pending suit, Kozak waived his bankruptcy discharge. Kozak's waiver of discharge stated: "I understand that by waiving my discharge, I will not receive a discharge of my debts in this case, and I further understand that I will not be able to discharge any debt that was or could have been listed in this case in a subsequent case." CP at 124.

In November 2011, Washington Trust obtained a judgment against Kozak for his outstanding debt on the two loans in Oregon's Washington County Circuit Court. At that time, Kozak's outstanding debt, excluding interest, was $892,958.29. According to Kozak, he was unaware that Washington Trust obtained a money judgment against him, in part because Washington Trust accomplished service through publication. However, based on the circuit court's register of actions in Washington Trust's suit against Kozak, it appears Washington Trust attempted to serve Kozak personally multiple times before "post[ing] on [the] gate of [Kozak's] residence" and publishing the summons in the "Daily Journal." CP at 72. Washington Trust also mailed the summons and complaint to Kozak.

In 2012, Washington Trust issued garnishments to various financial institutions, including the Bank of Oswego and Chase Bank, but the institutions returned the garnishments without any funds. Kozak did not make any payments on the judgment.

In 2015, Washington Trust served interrogatories and a "Notice of Demand to Pay Judgment" on Kozak. CP at 133. As of June 22, 2015, Kozak owed $1,466,129.45, which included principal, interest, costs, and attorney fees. The record does not show whether Kozak replied to the interrogatories.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56982-5-II

In February 2016, Kozak married his current spouse, Brittany Moyer. Then, in 2019, Washington Trust filed a motion for examination of judgment debtor and order restraining disposal of property. Oregon's Washington County Circuit Court granted Washington Trust's motion. The circuit court ordered Kozak to appear for a debtor's examination and to bring monthly bank statements of institutions where he held assets.

Kozak produced bank records for an account at iQ Credit Union, where he deposited paychecks for his work as an independent contractor. The iQ Credit Union account is a joint account between Kozak and his wife. According to Kozak, he did not have any other bank accounts. Kozak also testified that he was an Oregon resident with his permanent address in Molalla, Oregon. However, his secondary residence was in Battle Ground, Washington, where his wife owned a home.

In September 2019, Washington Trust filed the judgment against Kozak in Clark County Superior Court. Then, in October 2021, Washington Trust filed to extend the life of foreign judgment. The Clark County Superior Court renewed the judgment for another 10 years.

In November 2021, Washington Trust issued a writ of garnishment to iQ Credit Union for a total of $2,488,133.44. In its answer to the writ of garnishment, iQ Credit Union stated that there was $21,058.46 due and owing from iQ Credit Union, as garnishee, to Kozak. In December 2021, Kozak filed an exemption claim, cited to RCW 26.16.200,[1] and stated, "All funds are marital community and fully exempt from garnishment for this antecedent debt." CP at 31.

---

[1] RCW 26.16.200 provides in pertinent part:

No. 56982-5-II

Kozak argued that because Washington Trust did not reduce its claim against Kozak to judgment within the three years prior to his marriage or the three years immediately following his marriage, Washington Trust was precluded from reaching Kozak's earnings accumulated during his marriage. Washington Trust objected to the exemption claim.

In March 2022, the superior court held a hearing on the exemption claim. Washington Trust argued that the phrase "within three years" in RCW 26.16.200 means that a creditor has three years after a debtor's marriage to reduce a claim to judgment in order to continue collecting on the debt from community property assets. 1 Verbatim Rep. of Proc. (VRP) at 4. Accordingly, Washington Trust asserted, creditors who reduced their claims to judgment before a debtor's marriage should not be precluded from collecting on the debtor's earnings and accumulations after marriage. Kozak argued that a creditor of separate, premarital debt needed to reduce a claim to judgment either three years before marriage or three years after marriage in order to access community property funds.

The superior court denied Kozak's exemption claim. In its order, the superior court stated:

[A] judgment entered more than three years prior to a marriage satisfies the requirements under RCW 26.16.200, which is not a community property statute,

Neither person in a marriage . . . is liable for the debts or liabilities of the other incurred before marriage . . . nor for the separate debts of each other, nor is the rent or income of the separate property of either liable for the separate debts of the other: PROVIDED, That the earnings and accumulations of the spouse . . . shall be available to the legal process of creditors for the satisfaction of debts incurred by such spouse . . . prior to the marriage . . . . For the purpose of this section, neither person in the marriage . . . shall be construed to have any interest in the earnings of the other: PROVIDED FURTHER, That no separate debt, except a child support or maintenance obligation, may be the basis of a claim against the earnings and accumulations of either spouse . . . unless the same is reduced to judgment within three years of the marriage . . . of the parties.

5

No. 56982-5-II

> but rather intended to protect the non-debtor spouse from liability for the other marital partner's premarital debt. The court further concluded that RCW 26.16.200 is intended to preclude creditors who fail to obtain a judgment within three years *after* a marriage from reaching the debtor spouse's earnings and accumulations. Here, [Washington Trust] obtained a judgment against [Kozak] on November 4, 2011, more than three years prior to [Kozak]'s marriage to Brittany Kozak.

CP at 220 (emphasis in original). The superior court also stated that the writ of garnishment issued to iQ Credit Union did not extend to "earnings and accumulations that are traceable directly to [Kozak]'s spouse." CP at 220. The superior court ordered iQ Credit Union to pay the garnished funds in the amount of $21,058.46.

Kozak appeals.

## ANALYSIS

Kozak argues the superior court erroneously interpreted RCW 26.16.200 when it held that Washington Trust was not barred from garnishing Kozak's earnings and accumulations acquired after his marriage to satisfy his premarital, separate debt. Washington Trust argues that because it reduced its claim against Kozak to judgment well before Kozak's marriage and "within the three-year statutory framework of RCW 26.16.200," it is not barred from collecting on Kozak's marital earnings and accumulations to satisfy his outstanding debt. Br. of Resp't at 12. We agree with Washington Trust.

A.    STANDARD OF REVIEW

We review questions of statutory interpretation de novo. *Protective Admin. Servs., Inc. v. Dep't of Revenue*, 24 Wn. App. 2d 319, 330, 519 P.3d 953 (2022). "Our goal in interpreting a statute is to determine the legislature's intent and give effect to it." *Id.*

6

No. 56982-5-II

Courts first look to the plain meaning of a statute to derive legislative intent. *Burien Town Square Condo. Ass'n v. Burien Town Square Parcel 1, LLC*, 3 Wn. App. 2d 571, 574, 416 P.3d 1286, *review denied*, 191 Wn.2d 1015 (2018). A statute's plain meaning is discerned by consideration of "'the statutory context, related statutes, and the entire statutory scheme.'" *Protect Zangle Cove v. Dep't of Fish & Wildlife*, 17 Wn. App. 2d 856, 870, 488 P.3d 894 (quoting *Swinomish Indian Tribal Cmty. v. Dep't of Ecology*, 178 Wn.2d 571, 582, 311 P.3d 6 (2013)), *review denied*, 198 Wn.2d 1029 (2021). Courts may also look to the dictionary for undefined statutory terms. *State v. Eyman*, 24 Wn. App. 2d 795, 837, 521 P.3d 265 (2022).

A statute is ambiguous if there is more than one reasonable interpretation of its plain meaning. *Beasley v. GEICO Gen. Ins. Co.*, 23 Wn. App. 2d 641, 656, 517 P.3d 500 (2022), *review denied*, 200 Wn.2d 1028 (2023). In such cases, courts may look to legislative history. *Id.* However, courts "do not rewrite unambiguous statutory language under the guise of interpretation." *Jespersen v. Clark County*, 199 Wn. App. 568, 578, 399 P.3d 1209 (2017). Furthermore, courts construe statutes to avoid absurd results. *Id.*

B.      MARRIAGE, MARITAL BANKRUPTCY, AND RCW 26.16.200

1.      Legal Principles

Assets acquired after marriage are considered community property. RCW 26.16.030. Moreover, an individual is not liable for the separate, premarital debts of his or her spouse. RCW 26.16.200.

Typically, creditors can access only the separate property of a debtor to satisfy separate debts. *Ryan v. Diafos*, 110 Wn. App. 758, 762, 37 P.3d 304 (2001), *review denied*, 147 Wn.2d

No. 56982-5-II

1024 (2002). Once a debtor marries, "all of his earnings and accumulations therefrom [become] community property and [are] thus beyond the reach of the creditors." *Id.*; *Haley v. Highland*, 142 Wn.2d 135, 148, 12 P.3d 119 (2000) (stating "community property is generally not available to satisfy the separate debts of either spouse."). This rule is known as "'marital bankruptcy.'" *Diafos*, 110 Wn. App. at 763; *see* RCW 26.16.200.

The "marital bankruptcy" rule is reflected in RCW 26.16.200. *See Haley*, 142 Wn.2d at 144. However, RCW 26.16.200 also includes provisos. *See* RCW 26.16.200. RCW 26.16.200 states:

> Neither person in a marriage . . . is liable for the debts or liabilities of the other incurred before marriage . . . nor for the separate debts of each other, nor is the rent or income of the separate property of either liable for the separate debts of the other: PROVIDED, That the earnings and accumulations of the spouse . . . shall be available to the legal process of creditors for the satisfaction of debts incurred by such spouse . . . prior to the marriage . . . . For the purpose of this section, neither person in the marriage . . . shall be construed to have any interest in the earnings of the other: PROVIDED FURTHER, That no separate debt, except a child support or maintenance obligation, may be the basis of a claim against the earnings and accumulations of either spouse . . . unless the same is reduced to judgment within three years of the marriage . . . of the parties.

"Provisos operate as limitations on or exceptions to the general terms of the statute to which they are appended." *Shoulberg v. Pub. Util. Dist. No. 1 of Jefferson County*, 169 Wn. App. 173, 180, 280 P.3d 491, *review denied*, 175 Wn.2d 1024 (2012). Provisos are generally strictly construed. *Id.*

RCW 26.16.200's provisos alleviate the "harsh effects" of its general terms in which a creditor was "faced with marital bankruptcy from the moment of the debtor's marriage." *Watters v. Doud*, 92 Wn.2d 317, 322, 596 P.2d 280 (1979), *overruled on other grounds by Haley*, 142

8

No. 56982-5-II

Wn.2d at 150. Accordingly, creditors may access community property in satisfaction of a debtor spouse's premarital, separate debt so long as the claim is reduced to judgment within three years of marriage. RCW 26.16.200; *Haley*, 142 Wn.2d at 150 (holding that RCW 26.16.200 does not shield "community property from collection for the separate obligations of a spouse."). The intent of RCW 26.16.200 is "to protect one spouse from vicarious liability for the separate obligations of the other," not to protect community property. *Haley*, 142 Wn.2d at 147. Debtors have no obligation to disclose their marriage to creditors, nor is failure to disclose marriage concealment. *Watters*, 92 Wn.2d at 323.

    2.       Washington Trust's Claim is Not Barred by RCW 26.16.200

The parties dispute the meaning of "within" in the phrase, "within three years of the marriage" in RCW 26.16.200's second proviso. Kozak asserts that if the debt was not reduced to judgment within either three years before the marriage or three years after the marriage, "the creditor is barred absolutely" from accessing marital community assets—including a creditor who reduced its claim to judgment *more* than three years before the debtor's marriage. Br. of Appellant at 14. We disagree.

Courts look to the plain meaning of a statute to derive legislative intent. *Burien Town Square Condo. Ass'n*, 3 Wn. App. 2d at 574. Here, RCW 26.16.200 first provides its general terms: that an individual is not liable for the separate, premarital debts of their spouse. RCW 26.16.200. However, the first proviso qualifies the general terms: "the earnings and accumulations of the spouse . . . *shall be available* to the legal process of creditors for the satisfaction of *debts incurred by such spouse . . . prior to the marriage.*" RCW 26.16.200 (emphasis added). The

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56982-5-II

exception is clear. The earnings and accumulations of the debtor spouse—in other words, community assets—*shall* be available to creditors for the satisfaction of separate, premarital debts. Indeed, the legislature declared that in the context of premarital, separate debt, the non-debtor spouse does not possess an interest in the earnings and accumulations of the debtor spouse. RCW 26.16.200.

The final proviso qualifies the exception: if a creditor wants to access, and to continue accessing, community assets for the satisfaction of the separate, premarital debt, it must reduce its claim to judgment within a specified timeframe. RCW 26.16.200. The issue here is whether "within three years of the marriage" means, as Kozak argues, a six-year window of the three years before marriage and three years after marriage.

"Within" is not defined by statute. *See* RCW 26.16.200. Therefore, we may look to the dictionary definition of "within" to discern its plain meaning. *Eyman*, 24 Wn. App. 2d at 837.

Here, "within" is used as a preposition; in RCW 26.16.200, it expresses a frame of time. As a preposition, "within" is defined as "not longer in time than **:** before the end or since the beginning of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2627 (2002). Accordingly, the second proviso of RCW 26.16.200 should be read as "no separate debt . . . may be the basis of a claim against the earnings and accumulations of either spouse . . . unless the same is reduced to judgment [not longer in time than or before the end of] three years of the marriage . . . of the parties."

The interpretation of "within" as "not longer in time than" or "before the end of" is also supported by past cases that addressed RCW 26.16.200. Courts appear to have treated "within"

10

No. 56982-5-II

as forward-looking. *See, e.g.*, *Pac. Gamble Robinson Co. v. Lapp*, 95 Wn.2d 341, 347 n.2, 622 P.2d 850 (1980) ("Moreover, RCW 26.16.200, the so-called 'marital bankruptcy' statute, provides that the earnings and accumulations of a spouse shall be available to creditors for the satisfaction of debts incurred by that spouse prior to marriage for a period of 3 years *from the date of the marriage*." (emphasis added)), *overruled on other grounds by Haley*, 142 Wn.2d at 148; *Watters*, 92 Wn.2d at 322 ("[A] creditor is entitled to either 3 years of payments on the debt *after the marriage* from community assets or in the case of default, he may reduce his claim to judgment within 3 years of the marriage to reach community assets during the life of the judgment." (emphasis added)).

Kozak argues that RCW 26.16.200's provisos "were not intended to open the floodgates to creditors of all stripes, including those whose debts had been reduced to judgment before the marriage." Br. of Appellant at 16. Kozak's argument is unpersuasive. This is not a circumstance where there is a "flood" of creditors waiting in the wings to extract unexpected payments. Here, at issue are the rights of existing creditors who have otherwise followed proper procedure for satisfaction of outstanding debts by timely reducing the debt owed to a judgment against the debtor.

The effect of Kozak's proposed interpretation is to punish the timely creditor. This is in contravention to our Supreme Court's interpretation of RCW 26.16.200 and its provisos:

> The sounder view is that the amendment was meant to [a]lleviate the harsh effects of the previous law but was not intended to make community assets vulnerable for an indefinite period of time. We believe that the amendment serves to soften the effect of the main provision in that the creditor is no longer faced with marital bankruptcy from the moment of the debtor's marriage. Rather, pursuant to the amendment, a creditor is entitled to either 3 years of payments on the debt after the marriage from community assets or in the case of default, he may reduce his claim to judgment within 3 years of the marriage to reach community assets during the

11

No. 56982-5-II

> life of the judgment. This interpretation gives effect to the amendment without defeating the clear provisions of the general statute.

*Watters*, 92 Wn.2d at 322 (emphasis in original). Clearly, if the legislature intended to protect creditors through alleviating the "harsh effects" of the marital bankruptcy rule, it is absurd to think that the legislature did not intend to protect creditors who had judgments *prior* to a debtor's marriage. Indeed, should Kozak's interpretation be adopted, timely creditors with judgments secured over three years prior to the debtor's marriage suddenly lose all protections because there is no mechanism or avenue for a creditor to obtain judgment *again* after a debtor's marriage—for a judgment to be reduced to another judgment is a redundancy unheard of in the law.

Furthermore, a debtor has no obligation to inform a creditor of his or her marriage. *Watters*, 92 Wn.2d at 323. Accordingly, a creditor may have no notice that a debtor has married. Again, to say that the legislature statutorily prescribed a strict time limit for a creditor to reduce its claim to a judgment only during the three years *before* a marriage, which the creditor has no control or notice of, or that creditor will lose the ability to collect on its judgment is an interpretation that yields absurd results. We construe statutes to avoid absurd results. *Protect Zangle Cove*, 17 Wn. App. 2d at 870.

In addition to alleviating the harsh effects of the marital bankruptcy rule for creditors, our Supreme Court has also interpreted the intent of RCW 26.16.200 as to protect one spouse from the premarital liabilities of the other. *Haley*, 142 Wn.2d at 147. Accepting this as true, we note that prior to marriage, there is no spouse to protect. This bolsters the idea that "within" is meant as forward-looking and should be interpreted as "no later than" or "before the end of" three years of the marriage.

12

No. 56982-5-II

Based on the plain language of RCW 26.16.200 and considering the entire statutory scheme, we hold that "within three years of the marriage" means no later than or before the end of three years after marriage. Accordingly, Washington Trust's claim is not barred by RCW 26.16.200 because it reduced its claim to judgment before Kozak's marriage; thus, the judgment was obtained well before the end of three years after Kozak got married. Therefore, the superior court did not err in its order denying Kozak's exemption claim.

We affirm the superior court.

Lee, P.J.

We concur:

Price, J.

Che, J.